# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-3286

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Western |
| | * | District of Arkansas. |
| James Linkous, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: January 15, 2002

Filed:  April 5, 2002

_____

Before LOKEN, RICHARD S. ARNOLD, and MURPHY, Circuit Judges.

_____

MURPHY, Circuit Judge.

James Linkous pled guilty to a charge of possession with intent to distribute more than 50 grams of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii) (2000), and was sentenced by the district court[1] to 168 months.  He appeals from the denial of his motion to suppress evidence which he alleges was obtained through an illegal search and seizure.  We affirm.

_____

[1]The Honorable Robert T. Dawson, United States District Judge for the Western District of Arkansas.

On the morning of October 18, 2000 Officer Lance Dixon of the Van Buren, Arkansas Police Department observed an eastbound van with Tennessee plates following too close to another vehicle in a highway construction zone. After he saw the driver change lanes without signaling, Dixon stopped the van at 8:43 a.m. He approached the driver and asked him to step out of the vehicle and show his driver license and vehicle registration. Tony Yates was the driver, and he displayed a Tennessee license. James Linkous owned the van and was sitting in the passenger seat. Dixon asked Yates where he and the passenger were coming from, and Yates told him they had towed a pickup truck to Texas. Dixon observed that Yates appeared nervous, made no eye contact, and kept his arms crossed. He also noticed that a vein in Yates' neck was throbbing and that the van did not have either a towing apparatus or a place for a trailer hitch. These observations aroused Dixon's suspicions that something was amiss.

Dixon then approached James Linkous, requested his driver license, and asked him about their route. Linkous gave Dixon a South Carolina license and told him that he and Yates had hauled a pickup truck to California. Dixon became increasingly suspicious that Linkous and Yates could be concealing narcotics due to the discrepancies in their stories about their trip, their license registration in two different states, Yates' excessive nervousness, and the absence of a towing apparatus or trailer hitch on the van. At this point, approximately five minutes after Dixon had stopped the van, he radioed for assistance.

Dixon's suspicions increased as he continued to talk with Linkous. When he asked Linkous if he had any weapons, Linkous answered that there were knives inside the van. Dixon asked Linkous to step out of the van and saw that there was a noticeable bulge inside his pants. Dixon asked Linkous whether he was concealing something in his pants, and Linkous made an off color remark suggesting that it was his penis. Later at the jail it was determined that the bulge was caused by a bag of marijuana, a drug pipe, and a small bag of methamphetamine which Linkous had concealed in his pants.

Sergeant Larry Brown was in the near vicinity with a drug dog in his car, and he arrived at the scene approximately three minutes after Dixon's call for assistance. He led the dog around the van, and it alerted to drugs within three or four minutes. This prompted Linkous to volunteer nervously that he had been stopped the week before in Virginia where another dog had alerted to the same spot in the van. The van was searched, and a package appearing to contain methamphetamine was found. Linkous and Yates were placed under arrest at 9:02 a.m. and given Miranda warnings. The total amount of drugs seized as a result of the arrest were 411 grams of 32% pure methamphetamine, 6.8 grams of 31% pure methamphetamine, and 2 grams of marijuana. Linkous later admitted to Drug Enforcement Administration agents that the methamphetamine in the van was part of an operation during which he had transported at least 20 pounds of methamphetamine from Mexico to sell to truck drivers in the Knoxville, Tennessee area.

Linkous was indicted for possession with intent to distribute more than 50 grams of methamphetamine, and he moved to suppress evidence resulting from an illegal detention. United States Magistrate Judge Beverly S. Jones held a hearing and recommended that the motion be denied. Linkous filed written objections, and the district court denied the motion after a de novo review. Linkous subsequently entered a conditional plea of guilty, reserving the right to appeal the denial of his motion. The district court sentenced him to 168 months after finding him responsible for a mixture weight of 9.072 kilograms of methamphetamine.

Linkous contends that evidence concerning drugs and his statements to the officers should be suppressed because he and Yates were detained longer than necessary for a traffic stop and without reasonable suspicion. The government responds that the facts observed by Officer Dixon created a reasonable suspicion of criminal activity and justified further investigation and that the dog sniff did not violate the Fourth Amendment because it occurred within a short time after the van was pulled over and before the traffic stop had been completed.

We have previously observed that "[i]t is well established that a traffic violation – however minor – creates probable cause to stop the driver of a vehicle." United States v. Barry, 98 F.3d 373, 376 (8th Cir. 1996) (quoting United States v. Barahona, 990 F.2d 412, 416 (8th Cir. 1993)). This is true even if a valid traffic stop is a pretext for other investigation. Whren v. United States, 517 U.S. 806, 812-13 (1996). An officer making a traffic stop does not violate the Fourth Amendment by asking the driver his destination and purpose, checking the license and registration, or requesting the driver to step over to the patrol car. United States v. Poulack, 236 F.3d 932, 935 (8th Cir.), cert. denied, 122 S. Ct. 148 (2001). A police officer may undertake similar questioning of the vehicle's occupants to verify the information provided by the driver. United States v. Foley, 206 F.3d 802, 805 (8th Cir. 2000). In this case, Officer Dixon's observation of the van's following another vehicle too closely and making an improper lane change provided probable cause to make a traffic stop. There is no dispute that the initial stop was lawful or that the related questioning of Yates and Linkous was within constitutionally permitted bounds.

Linkous argues that Officer Dixon lacked reasonable suspicion to extend the traffic stop and that evidence obtained afterwards should have been suppressed. We review de novo the question whether particular facts add up to reasonable suspicion, Ornelas v. United States, 517 U.S. 690, 699 (1996), and our review of material findings of historical fact is for clear error with "due weight to inferences drawn from those facts" by the district court. Id. The Supreme Court has described reasonable suspicion as "a particularized and objective basis" for suspecting criminal activity. Id. at 696 (quoting United States v. Cortez, 449 U.S. 411, 417-18 (1981)). Whether an officer has reasonable suspicion to expand the scope of a traffic stop is determined by looking at "the totality of the circumstances, in light of the officer's experience." United States v. Dodson, 109 F.3d 486, 488 (8th Cir. 1997). Though each factor giving rise to suspicion might appear to be innocent when viewed alone, a combination of factors may warrant further investigation when viewed together. United States v. Bloomfield, 40 F.3d 910, 918 (8th Cir. 1994) (en banc). An officer's suspicion of criminal activity may reasonably grow over the course of a traffic stop as the circumstances unfold and more suspicious facts are uncovered. See United

States v. Morgan, 270 F.3d 625, 631 (8th Cir. 2001); Poulack, 236 F.3d at 936. See also Barahona, 990 F.2d at 416 ("[I]f the responses of the detainee and the circumstances give rise to suspicions unrelated to the traffic offense, an officer may broaden his inquiry and satisfy those suspicions.").

Officer Dixon, who is trained in highway drug interdiction, testified at the suppression hearing about a number of factors that aroused his suspicion. Dixon noticed that Yates was palpably nervous, made no eye contact, and kept his arms crossed. He also found Yates' claim that he and Linkous had towed a truck to Texas questionable because the van had neither a towing apparatus nor a place for a trailer hitch. Dixon's subsequent conversation with Linkous added to his suspicion that the two men could be involved in illegal activity. Linkous' explanation for their trip differed from the account that Yates had given, and the two men had driver licenses from different states. After Dixon had called for assistance within five minutes of the traffic stop, his suspicions increased as he discovered that Linkous had knives in the van and had a protruding bulge in his pants which was not credibly or civilly explained.

The combination of suspicious factors here gave Officer Dixon grounds to detain Linkous and Yates for a dog sniff of their van. There were a number of factors which taken together created a reasonable suspicion of criminal activity. See, e.g., Morgan, 270 F.3d at 631; Poulack, 236 F.3d at 936; United States v. Edmisten, 208 F.3d 693, 694 (8th Cir. 2000), cert. denied, 531 U.S. 1179 (2001); Bloomfield, 40 F.3d at 918-19. By the time Dixon radioed for assistance, he had heard inconsistent and seemingly implausible stories about towing a truck, observed Yates' excessive nervousness, and learned that the two men had driver licenses from different states. His suspicions increased when he learned that Linkous possessed knives, had a strange bulge in his pants, and responded in a crude manner when asked about it. This situation was thus unlike that in United States v. Beck, 140 F.3d 1129, 1137-39 (8th Cir. 1998), or United States v. Woods, 106 F.3d 942, 946-47 (10th Cir. 1997), in which a combination of innocent factors was not enough to create reasonable suspicion. The district court did not therefore err when it concluded that the totality

of the circumstances provided Dixon with reasonable suspicion to detain Linkous and Yates for the dog sniff.

The length of time Linkous and Yates were detained was not unreasonable. The time elapsed between the initial stop of the van and the arrest of Yates and Linkous was only nineteen minutes. The record indicates that they were delayed no more than seven or eight minutes from the time Dixon radioed for assistance until the dog completed its sniff of the van. A short detention for a dog sniff after the completion of a traffic stop does not violate the Fourth Amendment. See United States v. $404,905.00 in U.S. Currency, 182 F.3d 643, 648-49 (8th Cir. 1999), cert. denied, 528 U.S. 1161 (2000) (two minute delay for dog sniff a de minimis intrusion); Morgan, 270 F.3d at 632 (same conclusion for a delay of less than ten minutes). In this case, Officer Dixon had not even had time to write any traffic citations at the point at which his suspicions were reasonably aroused and he radioed for assistance. The traffic stop had not then been completed, and the dog arrived within several minutes. Once it alerted to the presence of drugs in the van, there was probable cause to search the vehicle. Bloomfield, 40 F.3d at 919.

In sum, we conclude that Linkous and Yates were not illegally detained and that the district court did not err in denying Linkous' suppression motion. The judgment is therefore affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.