# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-2445

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff-Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Orlando Martinez, | * | |
| | * | |
| Defendant-Appellant. | * | |

_____

Submitted: January 13, 2004

Filed: March 2, 2004

_____

Before BYE, LAY, and SMITH, Circuit Judges.

_____

LAY, Circuit Judge.

A jury found Orlando Martinez guilty of possession with intent to distribute over five kilograms of cocaine. Martinez appeals from the judgment of conviction, arguing the district court[1] erred in denying his motion to suppress evidence and in admitting certain evidence at trial. We affirm.

_____

[1]The Honorable Jean C. Hamilton, United States District Judge for the Eastern District of Missouri.

# I.

On June 30, 2002, officers from the Phelps County, Missouri, Sheriff's Department participated in a drug interdiction program on Interstate 44 in Phelps County. As part of the program, the officers placed signs reading "Drug Enforcement Checkpoint Ahead, One Fourth Mile" and "Drug Dogs In Use" along the eastbound lanes of Interstate 44. The signs, written in English and Spanish, were located just west of the exit for Sugar Tree Road on a portion of Interstate 44 that curves sharply so drivers cannot see what is ahead. The Sugar Tree Road exit is located in a remote area that has no shops or restaurants. There is little reason for motorists to take the Sugar Tree Road exit unless they are local residents.

In reality, there was no drug enforcement checkpoint on Interstate 44. Instead, the signs placed along Interstate 44 were a ruse to induce motorists engaged in drug-related activity to take the Sugar Tree Road exit. Officers were stationed at the top of the Sugar Tree Road exit but did not stop every vehicle taking the exit. Only motorists who were observed committing a traffic violation were stopped.

At about 2:00 p.m. on June 30, 2002, Martinez was traveling eastbound on Interstate 44 in his tractor trailer. Deputy David Rightnowar and Sheriff Don Blankenship, who were stationed in separate vehicles at the top of the Sugar Tree Road exit, observed Martinez's tractor trailer come up the exit ramp, roll through the stop sign at the top of the exit ramp, turn left across the overpass, and then turn left again onto the entrance ramp to westbound Interstate 44. Upon observing the traffic violation, Deputy Rightnowar followed Martinez and stopped him on the shoulder of westbound Interstate 44. Sheriff Blankenship arrived on the scene a minute or so after Deputy Rightnowar's stop.

Deputy Rightnowar asked Martinez about the nature of his travel and why he had turned around at the Sugar Tree Road exit. Martinez said he was traveling from

California to Maine and had turned around to go back to the last exit to eat. Deputy Rightnowar found Martinez's answer suspicious because he knew there were no restaurants at the last exit and that the closest restaurant was three exits back. Both Deputy Rightnowar and Sheriff Blankenship observed that Martinez was extremely nervous and that his hands were shaking uncontrollably. Deputy Rightnowar asked Martinez if he had anything in the truck, and Martinez answered "no." When Deputy Rightnowar asked if he could search the truck, Martinez answered "yes" and handed him the keys to the trailer.

At about this time, other officers arrived at the scene with a drug detection dog. After Martinez had consented to the search of the truck, the drug dog was allowed to sniff the tractor trailer and reacted in a manner indicating the presence of drugs. Within a few minutes, the officers found seventeen kilograms of cocaine and a small amount of crack cocaine stuffed in a duffle bag in the trailer of the truck. Martinez was then arrested and read his Miranda rights.

Prior to trial, Martinez moved to suppress evidence of the drugs, arguing, in part, that he was seized and his truck was searched in violation of his Fourth Amendment rights. On October 18, 2002, the magistrate judge[2] issued a Report and Recommendation, recommending that the motion be denied. Martinez objected to the Report and Recommendation and asked the district court to refer the matter back to the magistrate judge for reconsideration in light of United States v. Yousif, 308 F.3d 820 (8th Cir. 2002).

Yousif involved a "ruse checkpoint" at the Sugar Tree Road exit. As in this case, the Phelps County Sheriff's Department placed signs along eastbound Interstate 44 near the Sugar Tree Road exit indicating that a drug checkpoint was ahead, but

---

[2]The Honorable Frederick R. Buckles, United States Magistrate Judge for the Eastern District of Missouri.

-3-

there was no checkpoint along the Interstate.  Id. at 823.  Instead, the checkpoint was located on the Sugar Tree Road exit ramp.  Id.  This court held that the Sugar Tree Road checkpoint, as it was conducted at that time, "violated the Fourth Amendment insofar as its primary purpose was the interdiction of drug trafficking . . . and the officers operating the Sugar Tree Road checkpoint were under instructions to stop *every* vehicle that took the Sugar Tree Road exit."  Id. at 827.  We also held that the totality of the circumstances did not justify the stop since many of the circumstances would never have arisen absent the illegal checkpoint, id. at 829, and that Yousif's allegedly voluntary consent to the search "did not purge the primary taint of the illegal stop."  Id. at 831.

Rather than referring the matter back to the magistrate judge, the district court analyzed Yousif and found it to be distinguishable because Martinez's traffic violation provided a legitimate reason to detain Martinez, Martinez's suspicious behavior upon being stopped justified his further detention, and Martinez's consent to the search of his vehicle was voluntarily.  On this basis, the district court adopted the magistrate judge's Report and Recommendation and denied the motion to suppress.  Following a jury trial, Martinez was convicted and sentenced to 151 months imprisonment.  He now appeals.

## II.

We first address Martinez's claim that the district court erred in denying the motion to suppress.  The denial of a motion to suppress is reviewed *de novo*, but the district court's underlying factual determinations are reviewed for clear error.  See United States v. Walker, 324 F.3d 1032, 1036 (8th Cir. 2003).

All of Martinez's arguments on this issue more or less hinge on his assertion that the officers were operating an illegal checkpoint, which rendered the seizure of his truck and subsequent search of the vehicle unconstitutional under the rationale of

City of Indianapolis v. Edmond, 531 U.S. 32 (2000), and Yousif. The problem with Martinez's arguments is that the officers in this case were not operating a checkpoint like those in Edmond and Yousif.

The checkpoints in Edmond involved the use of signs similar to the ones used in the present case and were intended to interdict illegal drugs. 531 U.S. at 34-36. However, unlike the present case, the police in Edmond stopped a predetermined number of vehicles at each checkpoint. Id. at 35. The primary purpose of the checkpoints in Edmond was to "uncover evidence of ordinary criminal wrongdoing." Id. at 41-42. In holding that the checkpoints violated the Fourth Amendment, the Court explained:

> The primary purpose of the Indianapolis narcotics checkpoints is in the end to advance "the general interest in crime control[.]" We decline to suspend the usual requirement of individualized suspicion where the police seek to employ a checkpoint primarily for the ordinary enterprise of investigating crimes. We cannot sanction stops justified only by the generalized and ever-present possibility that interrogation and inspection may reveal that any given motorist has committed some crime.

Id. at 44 (citation omitted).

While the present case is factually similar to Edmond and Yousif, a critical distinction remains: Edmond and Yousif involved the use of actual checkpoints at which motorists were stopped regardless of whether they had committed a traffic violation. Here, there was no checkpoint on the Sugar Tree Road exit, and motorists who took the exit were not stopped unless they were observed committing a traffic violation. Given this distinction, Edmond and Yousif are not controlling.[3]

_____

[3]Martinez's arguments that (1) his traffic violation cannot be considered a valid basis for the stop because it was the direct result of an illegal checkpoint, and (2) the drugs are inadmissible because they were the indirect result of an illegal checkpoint,

Nonetheless, we still must address whether Martinez's Fourth Amendment rights were violated. For the reasons that follow, we conclude they were not.

A traffic stop constitutes a "seizure" within the meaning of the Fourth Amendment, see Delaware v. Prouse, 440 U.S. 648, 653 (1979), and therefore must be reasonable to survive constitutional scrutiny. See Whren v. United States, 517 U.S. 806, 810 (1996). A traffic stop based on probable cause is reasonable under the Fourth Amendment. See id. at 819. It is well settled that "[a]ny traffic violation, however minor, provides probable cause for a traffic stop." United States v. Johnson, 58 F.3d 356, 357 (8th Cir. 1995) (quoting United States v. Bloomfield, 40 F.3d 910, 915 (8th Cir. 1994).

There is no dispute that Martinez committed a traffic violation by failing to stop at the stop sign. As a result, the officers had probable cause to stop Martinez. The fact that the officers may have believed Martinez was carrying illegal drugs does not invalidate an otherwise valid stop. See Whren, 517 U.S. at 810-13 (holding that traffic stops based on probable cause are valid even if the officer stopping the vehicle suspects that the occupant is engaged in other illegal activity). Furthermore, the officers' use of the deceptive signs does not make the stop illegal, as it is well-established that officers may use deception to uncover criminal behavior. See, e.g., Sorrells v. United States, 287 U.S. 435, 441 (1932). Thus, we find no error in the district court's finding that Martinez was lawfully stopped after committing a traffic violation.

Martinez also argues his consent to the search of the vehicle was involuntary and did not purge the taint resulting from the use of the illegal checkpoint. We need not address the second part of Martinez's argument because there was no illegal checkpoint in this case. We therefore review whether the district court clearly erred

---

are foreclosed by our conclusion that there was no illegal checkpoint in this case.

in finding that Martinez's consent was voluntary.  See United States v. Chaidez, 906 F.2d 377, 380 (8th Cir. 1990).

The magistrate judge found that Martinez was not under the influence of alcohol or drugs at the time of the encounter, was not threatened or physically abused during the encounter, and was not under arrest at the time he gave consent.  See id. at 381 (setting forth factors for determining the voluntariness of a consent to search). The magistrate judge further found that the encounter took place in an open and public area, that the officers made no promises to Martinez to induce his consent, and that Martinez, who is of Hispanic origin, spoke English in a coherent and responsive manner.  See id.  The district court adopted the magistrate judge's findings, and we believe there is substantial evidence in the record to support the district court's decision.  On this basis, we conclude the district court's finding that Martinez's consent to the search was given voluntarily is not clearly erroneous.

## III.

Martinez argues the district court erred in admitting expert testimony regarding the structure and operation of drug trafficking organizations. During Martinez's trial, Salvator Cira, an Intelligence Research Specialist at the Department of Justice with thirty years of law-enforcement experience, testified for the Government about, among other things, the structure of drug trafficking organizations and the role of drug couriers.  Cira testified that a drug distributor would not have allowed the quantity of drugs in this case out of his control, and that, in his experience, he had never encountered a courier who did not know what was in his vehicle.  Martinez never objected to the admission of Cira's testimony in district court.  Therefore, we review this claim for plain error.  See United States v. Jones, 266 F.3d 804, 814 (8th Cir. 2001).

Relying on Ninth Circuit precedent, Martinez contends admission of the testimony was error because he was not charged with conspiracy to import drugs and no evidence was presented to link him to an actual drug trafficking organization. See United States v. Vallejo, 237 F.3d 1008, 1012 (9th Cir. 2001) (holding that expert testimony concerning the structure of drug trafficking organizations is inadmissible where the defendant is not charged with a conspiracy to import drugs or where such evidence is not otherwise probative of a matter properly before the court). Martinez also contends admission of the testimony was clearly prejudicial to him because it portrayed him as a member of a large drug organization. See United States v. Pineda-Torres, 287 F.3d 860, 866 (9th Cir. 2002) (holding that the district court committed prejudicial error in admitting expert testimony about the structure of drug trafficking organizations because the testimony portrayed the defendant as a member of such an organization and implied the defendant knew the drugs were in his vehicle). We are not persuaded by Martinez's arguments.

We conclude the district court did not plainly err in admitting the expert testimony because the testimony was relevant to show knowledge, and the probative value of the testimony was not substantially outweighed by any danger of unfair prejudice. See Fed. R. Evid. 401 and 403. Martinez maintained at trial that the Government failed to present evidence that he knew the drugs were on his truck or that he had placed the drugs on his truck. In effect, Martinez relied on an "unknowing courier" defense. This court has approved the admission of expert testimony to the effect that "drug traffickers do not typically use couriers who are unaware they are transporting drugs" where one theory of defense was that the defendant was unaware the drugs were present. United States v. Vasquez, 213 F.3d 425, 427 (8th Cir. 2000).[4] Furthermore, we have consistently held that it is within the

---

[4]The Ninth Circuit has also approved the use of such testimony. See United States v. Murillo, 255 F.3d 1169, 1176-78 (9th Cir. 2001) (upholding the admission of expert testimony that drug traffickers do not routinely entrust large quantities of drugs to unknowing couriers to attack defendant's unknowing courier defense).

discretion of the trial court to allow expert testimony concerning "the modus operandi of drug dealers in areas concerning activities which are not something with which most jurors are familiar." United States v. Solorio-Tafolla, 324 F.3d 964, 966 (8th Cir. 2003) (quoting United States v. Molina, 172 F.3d 1048, 1056 (8th Cir. 1999)).

## IV.

Because we find no error in the district court's denial of the motion to suppress or admission of evidence, we affirm.

_____