# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-1753

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Karamoke M. Fuse, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: September 14, 2004
Filed: December 10, 2004

_____

Before RILEY, LAY, and SMITH, Circuit Judges.

_____

RILEY, Circuit Judge.

This case presents us again with a traffic stop resulting in an extended investigation, detention for a dog sniff, a search, and a seizure of illegal drugs. Karamoke M. Fuse (Fuse) pled guilty to conspiring to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846. Pursuant to his plea agreement and Federal Rule of Criminal Procedure 11(a)(2), Fuse reserved the right to appeal the district court's[1] order denying Fuse's motion to suppress

_____

[1]The Honorable Fernando J. Gaitan, Jr., United States District Judge for the Western District of Missouri.

cocaine found in the search of his car following a traffic stop. Fuse now exercises that right. We affirm.

## I.    BACKGROUND

Kansas Highway Patrol Trooper John Rule (Trooper Rule) was patrolling Interstate 70 in Ellis County, Kansas, when he encountered a car traveling eastbound bearing a rear California license plate, but no front license plate, in violation of California law. Trooper Rule pulled the car over and approached the passenger-side window of the car. Seated inside the car were Fuse, in the driver's seat, and Cleveland Burgie, Jr. (Burgie), in the front passenger seat. While Trooper Rule was standing at the passenger-side window, he noticed a very strong odor of air freshener. Trooper Rule explained why he stopped the car, and Fuse told Trooper Rule the front license plate was in the car's trunk. Trooper Rule asked Fuse for his driver's license and vehicle registration, and Fuse complied. The driver's license identified the driver as Fuse. Trooper Rule asked Fuse who owned the car. Fuse stated the car belonged to his girlfriend. Trooper Rule asked Fuse about his travel plans, and Fuse said he was driving from California to Kansas City for a job interview. Trooper Rule found Fuse's story strange, because it was late morning on a Friday and Fuse was not dressed like he was going to an interview. Trooper Rule observed a mobile telephone and "NoDoz" in the car. Trooper Rule also believed both Fuse and his passenger, Burgie, were extremely nervous, describing little eye contact and Fuse's hands shaking. After Trooper Rule informed Fuse a warning ticket would be issued, Trooper Rule returned to his patrol car to write the warning citation and check Fuse's criminal history. Trooper Rule learned Fuse had been arrested for a crime in the past, but the criminal history report was not specific.

When Trooper Rule returned to Fuse's car, Fuse and Burgie continued to appear unusually nervous. Trooper Rule handed Fuse his driver's license, vehicle registration, and the warning citation. Trooper Rule told Fuse to put on the license plate and to have a "safe trip." When Trooper Rule stepped away from the car, Fuse

started to put the car in gear. Trooper Rule then stepped back to the car and asked if he could ask a few more questions. Fuse and Burgie indicated their willingness to answer further questions, and then Trooper Rule asked Fuse about his job interview in Kansas City. Fuse told Trooper Rule the interview was with AT&T and scheduled for Tuesday. Trooper Rule found it unusual an individual traveling to a job interview would arrive four days before the interview. Trooper Rule also was suspicious of Fuse's story because Trooper Rule assumed AT&T would fly a job candidate to a job interview, rather than require him to drive cross-country. The fact Fuse was accompanied by another person to attend a job interview also struck Trooper Rule as somewhat unusual.

Trooper Rule asked Fuse if he was "carrying anything illegal, guns, drugs, or large amounts of money," and Fuse stated he was not. Trooper Rule asked for permission to search the car. Fuse told him no. Trooper Rule then asked Fuse and Burgie to exit the car at which time Trooper Rule proceeded to pat down both for weapons and then told them to stand at the side of the road. Trooper Rule ran his drug-sniffing dog, Butkus, who had been in the back of the patrol car, around Fuse's car. Butkus alerted to the trunk of the car. A subsequent search of the trunk uncovered approximately five kilograms of cocaine in a locked duffle bag.

Fuse moved to suppress the cocaine. After an evidentiary hearing, the magistrate judge recommended the motion to suppress be granted, concluding Trooper Rule did not have reasonable suspicion to justify the renewed detention of Fuse. Rejecting the magistrate judge's recommendation, the district court denied the motion to suppress.

On appeal, Fuse concedes the traffic stop was lawful. Fuse argues, however, that after completion of the traffic stop and issuance of the warning citation, Trooper Rule lacked reasonable suspicion to justify the subsequent detention. In response, the government contends: (1) the observations of Trooper Rule during the initial traffic

stop created reasonable suspicion justifying further detention; and (2) the dog sniff did not violate the Fourth Amendment, because it was a *de minimis* intrusion.[2]

## II.  DISCUSSION

When reviewing a district court's denial of a motion to suppress, we examine for clear error the district court's factual findings, and we review de novo the ultimate question of whether the Fourth Amendment has been violated.  United States v. Stephens, 350 F.3d 778, 779 (8th Cir. 2003).  "We must affirm an order denying a motion to suppress unless the decision is unsupported by substantial evidence, is based on an erroneous view of the applicable law, or in light of the entire record, we are left with a firm and definite conviction that a mistake has been made."  United States v. Rodriguez-Hernandez, 353 F.3d 632, 635 (8th Cir. 2003).

The Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV; see United States v. Ameling, 328 F.3d 443, 447 (8th Cir. 2003) (Fourth Amendment applies to the states through the Fourteenth Amendment). "A traffic stop constitutes a 'seizure' within the meaning of the Fourth Amendment." United States v. Martinez, 358 F.3d 1005, 1009 (8th Cir. 2004) (citing Delaware v. Prouse, 440 U.S. 648, 653 (1979)).  The principles of Terry v. Ohio, 392 U.S. 1 (1968), govern traffic stops.  United States v. Jones, 269 F.3d 919, 924 (8th Cir. 2001).  Generally, a traffic "stop must be supported by at least a reasonable,

---

[2]Because we determine Trooper Rule had reasonable suspicion to detain Fuse, we need not address the government's alternative argument under a *de minimis* exception.  See United States v. $404,905.00 in U.S. Currency, 182 F.3d 643, 647, 649 (8th Cir. 1999) (holding a canine sniff of the exterior of a vehicle in a public location does not constitute a Fourth Amendment "search," and a delay for a two-minute canine sniff is a *de minimis* intrusion on a person's liberty); see also United States v. Linkous, 285 F.3d 716, 721 (8th Cir. 2002) (concluding a "short detention for a dog sniff after the completion of a traffic stop does not violate the Fourth Amendment").

articulable suspicion that criminal activity" has occurred or is occurring.  Jones, 269 F.3d at 924 (citing Prouse, 440 U.S. at 663).

We have observed that "[i]t is well established that a traffic violation–however minor–creates probable cause to stop the driver of a vehicle."  United States v. Barry, 98 F.3d 373, 376 (8th Cir. 1996) (quoting United States v. Barahona, 990 F.2d 412, 416 (8th Cir. 1993)).  When an officer makes a routine traffic stop, "the officer is entitled to conduct an investigation reasonably related in scope to the circumstances that initially" justified the interference.  United States v. McCoy, 200 F.3d 582, 584 (8th Cir. 2000) (per curiam).  The officer also may detain a motorist while the officer completes certain routine tasks, such as writing a citation and completing computerized checks of a driver's license, vehicle registration, and criminal history.  $404,905.00 in U.S. Currency, 182 F.3d at 647.

"[O]nce the officer decides to let a routine traffic offender depart with a ticket, a warning or an all clear–a point in time determined, like other Fourth Amendment inquiries, by objective indicia of the officer's intent–then the Fourth Amendment applies to limit any subsequent detention or search."  Id. at 648.  The officer cannot continue to detain a motorist after the initial stop is completed, unless the officer has "a reasonably articulable suspicion for believing" criminal activity is afoot.  United States v. Beck, 140 F.3d 1129, 1134 (8th Cir. 1998); see also Jones, 269 F.3d at 925 ("[W]ith the purpose of the traffic stop completed, it would be an unreasonable extension of the scope of the investigation for [the trooper] to further detain [the suspect] or his vehicle, 'unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify a further detention'") (quoting United States v. Mesa, 62 F.3d 159, 162 (6th Cir. 1995)).

In this case, Fuse concedes the initial traffic stop was valid because Trooper Rule's observation that Fuse's car failed to display a front license plate provided probable cause to stop Fuse's car.  When Trooper Rule returned Fuse's driver's

license and the vehicle registration, delivered the warning citation, told Fuse to have a "safe trip," and stepped away from Fuse's car, the traffic stop clearly had ended. Fuse was free to go.

Fuse's argument on appeal is that Trooper Rule lacked reasonable suspicion to detain Fuse further for a dog sniff after the initial traffic stop concluded, because the "clear break" between the original traffic stop and the subsequent detention for the dog sniff essentially negated any reasonable suspicions developed by Trooper Rule during the traffic stop. Thus, Fuse suggests Trooper Rule should have ignored all the observations he made before the time he permitted Fuse to leave.

The Tenth Circuit's decision in United States v. Williams, 271 F.3d 1262 (10th Cir. 2001), squarely addresses the question of whether an officer's objectively reasonable suspicions developed during a traffic stop are nullified when the officer indicates to a driver he is free to leave.[3] In Williams, a Kansas Highway Patrol Trooper stopped a car for speeding. Id. at 1264. During the traffic stop, the trooper observed several factors which raised his suspicion the defendant may have been transporting drugs: (1) the defendant exhibited exceptional or extreme nervousness throughout the duration of the stop; (2) the defendant had a walkie-talkie type radio commonly used by people driving in tandem; (3) the name on the car rental agreement did not match the name on the defendant's driver's license; and (4) the defendant's unusual travel plans. Id. at 1265. Despite his suspicions of criminal activity, the trooper returned the driver's license and car rental agreement to the defendant. Id. "In addition, the [trooper] said something to the effect of, 'Thanks a lot. We'll see you.'" Id.

---

[3]It is interesting to note the Williams precedent from the Tenth Circuit would control this seizure and search in Kansas, if Fuse were prosecuted where the stop occurred.

The trooper then asked the defendant if he would answer a few more questions, and the defendant agreed.  Id.  The trooper first asked whether the defendant "was carrying any contraband or large amounts of cash."  Id.  The defendant said no.  Id.  Then the trooper asked if he could search the car, which the defendant refused.  Id.  At that point, the trooper told the defendant he would detain him until a drug-sniffing dog could arrive and sniff the outside of the car.  Id.  Approximately fifteen minutes from the time of the initial stop, the drug-sniffing dog "arrived and eventually alerted to the trunk area of the" car.  Id.  A search of the trunk revealed several large bales of marijuana.  Id.

The defendant moved to suppress the marijuana.  Relying on the trooper's observations made prior to the trooper returning the defendant's travel documents and verbally indicating the defendant was free to leave, the district court held the trooper had sufficient reasonable suspicion to detain the defendant further for the purpose of the drug dog sniff.  Id. at 1266.  The defendant appealed to the Tenth Circuit, arguing the trooper's return of the defendant's travel documents and verbal indication the defendant was free to leave nullified any of the suspicion that had developed during the initial stop.  Id. at 1270-71.  In rejecting the defendant's argument, the Tenth Circuit stated:

> Mr. Williams fails to cite any case, nor can we find any, suggesting that the return of such documentation negates an officer's objectively reasonable suspicions developed during a traffic stop.  Although the record indicates that the [trooper] subjectively intended that Mr. Williams was free to go, the relevant inquiry in this case is based on the objective facts known to the [trooper], not upon the [trooper's] subjective state of mind . . . .  Whether the [trooper] never intended to release Mr. Williams or whether he simply changed his mind after the consensual questioning does not alter our analysis if the [trooper] already had sufficient reasonable suspicion to detain Mr. Williams for the purpose of the canine drug search.  We therefore conclude that the [trooper's] indication to Mr. Williams that he was free to leave bears no

-7-

significance in our determination of whether the [trooper] had reasonable suspicion to detain Mr. Williams.

Id. at 1271. We find the Tenth Circuit's opinion in Williams persuasive and conclude the termination of a traffic stop does not effectively erase the objectively reasonable suspicions developed by a police officer during the traffic stop.

We next turn to whether Trooper Rule's observations made during the initial traffic stop were sufficient to create reasonable suspicion to support the detention of Fuse for a dog sniff after the initial stop was completed. While "reasonable suspicion" must be more than an inchoate "hunch," the Fourth Amendment only requires that police articulate some minimal, objective justification for an investigatory stop. United States v. Sokolow, 490 U.S. 1, 7 (1989). In determining whether Trooper Rule had reasonable suspicion, the court must consider the totality of the circumstances in light of Trooper Rule's experience. United States v. Arvizu, 534 U.S. 266, 273 (2002). Although each factor giving rise to reasonable suspicion may appear innocent when viewed by itself, "a combination of factors may warrant further investigation when viewed together." Linkous, 285 F.3d at 720.

Our review of the record convinces us Trooper Rule had reasonable suspicion of illegal activity sufficient to extend the stop a few additional minutes to conduct a dog sniff. Trooper Rule, who is an experienced officer trained in highway drug interdiction, testified at the suppression hearing about several facts that raised his suspicion: (1) a strong odor of air freshener, which was significant to Trooper Rule, because drug smugglers commonly use air freshener to mask the odor of controlled substances; (2) Fuse's prior arrest; (3) the car did not belong to Fuse or Burgie; (4) Fuse and Burgie were traveling from California, a "source state" for illegal narcotics; (5) Fuse's unusual explanation for traveling to Kansas City; (6) Fuse's and Burgie's continued, unusual nervousness even after Trooper Rule advised them he was issuing only a warning citation; and (7) Trooper Rule's observation of a mobile telephone and "NoDoz" in the car.

Fuse argues the facts of this case are indistinguishable from those in <u>Beck</u>, 140 F.3d at 1137-39. In <u>Beck</u>, we concluded the following circumstances were not sufficient to create reasonable articulable suspicion to support detention after the initial stop was completed: (1) Beck was driving a car that had been rented by an absent third party; (2) the car was licensed in California and was stopped in Arkansas; (3) there was fast food trash on the passenger-side floor; (4) there was no visible luggage in the car; (5) Beck appeared nervous; (6) Beck was traveling from a source state to a drug demand state; and (7) the officer disbelieved Beck's explanation for his trip. <u>Beck</u>, 140 F.3d at 1137. Unlike the defendant in <u>Beck</u>, however, Fuse had been arrested previously, the car had a strong odor of air freshener, and both Fuse and Burgie exhibited extreme or unusual nervousness throughout the duration of the stop, even after Trooper Rule stated he would be issuing only a warning ticket. The combination of suspicious factors here was stronger than in <u>Beck</u>. Given the totality of the circumstances, we conclude the facts of this case are sufficient to demonstrate reasonable suspicion justifying continued detention of Fuse to conduct a dog sniff.

## III.   CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

_____