UNITED STATES of America,
Plaintiff,

v.

Ernesto TORRES–MONJE and Vidal
Rivera–Rocha, Defendants.

No. 1:06–CR–018.

United States District Court,
D. North Dakota,
Southwestern Division.

May 22, 2006.

William Delaney Schmidt, Federal Public Defender Office, Paul H. Myerchin, Bormann Law Office, Bismarck, ND, for Defendants.

Scott J. Schneider, U.S. Attorney's Office, Bismarck, ND, for Plaintiff.

## ORDER DENYING DEFENDANTS' MOTIONS TO SUPPRESS

HOVLAND, Chief Judge.

Before the Court are separate Motions to Suppress filed by defendants Ernesto Torres–Monje and Vidal Rivera–Rocha on April 4, 2006. *See* Docket Nos. 27 & 31. Rivera–Rocha has since joined in Torres–Monje's motion. *See* Docket No. 39. Both motions seek to suppress evidence seized from a green Chevrolet Lumina that Torres–Monje was operating on January 17, 2006. The Government opposes both motions. *See* Docket Nos. 40 & 48. An evidentiary hearing was held on May 4, 2006, in Bismarck, North Dakota. North Dakota State Highway Patrol Trooper Jeremy Rost and United States Border Patrol Agent William Mayer testified. The Defendants did not present any evidence. For the reasons outlined below, the motions are denied.

## I. *BACKGROUND*

On January 17, 2006, shortly after midnight, North Dakota State Highway Patrol Trooper Jeremy Rost entered Interstate 94 at Exit 156 in Bismarck, North Dakota, traveling eastbound. As he entered I–94, Trooper Rost observed a green Chevrolet Lumina also traveling eastbound. The Lumina was traveling 72 miles per hour in a 60 mile-per-hour zone. Trooper Rost activated his emergency lights and initiated a traffic stop for speeding. The Lumina stopped on the south shoulder of I–94 at mile marker 158. Trooper Rost stopped behind the Lumina. Upon illuminating the vehicle, Trooper Rost observed two male occupants in the front seat and Washington license plates. Trooper Rost contacted State Radio at approximately 12:07 a.m.

Trooper Rost exited his patrol car and approached the Lumina on the passenger side. From outside the passenger door, Trooper Rost informed the driver, Ernesto Torres–Monje, that he had stopped the vehicle for speeding. Trooper Rost asked Torres–Monje for his driver's license, vehicle registration, and insurance card. Torres–Monje produced a Washington driver's license in his name, and the passenger, Vidal Rivera–Rocha, produced an identification card from the State of Washington in his name. Both cards were handed to Trooper Rost. No vehicle registration or insurance card was produced at that time.

During his initial questioning of the driver and passenger, Trooper Rost testified that he was not getting "normal responses." He believed that Torres–Monje and Rivera–Rocha were having difficulty understanding and communicating in English. Both appeared to be Hispanic. Trooper Rost asked Torres–Monje and Rivera–Rocha if they had green cards or resident alien cards, to which both men audibly stated "no" and also shook their heads in the negative. Trooper Rost estimated that the entire conversation lasted approximately two (2) minutes.

At the time of the initial stop and while standing outside the passenger door, Trooper Rost personally observed several suspicious articles in the Lumina. A six-gallon gas can was lying on the rear seat. The carpet appeared wrinkled as though it had been manipulated or removed. No luggage was visible. Finally, the car contained multiple air fresheners, one on the passenger-side visor, and one in between the two front seats. Based on his training and expertise, Trooper Rost identified these articles as being emblematic of criminal drug activity.

Trooper Rost then walked to the driver's side of the vehicle and asked Torres–Monje to step out of the vehicle. As Torres–Monje exited the vehicle, a bottle of new car scent air freshener became visible. Torres–Monje accompanied Trooper Rost back to the patrol car and was seated in the front-passenger seat at approximately 12:11 a.m. Trooper Rost sought to verify Torres–Monje's citizenship and prepare a warning ticket for the speeding violation. Trooper Rost testified that it was his common practice to place individuals in his patrol car while securing such information.

Once inside the patrol car, Trooper Rost began to fill out the warning ticket and run the obligatory identification, license plate, and vehicle registration checks on his computer. To do so, Trooper Rost engaged in further conversation with Torres–Monje to secure some basic personal information. Again, Torres–Monje exhibited difficulty in understanding and communicating. Due to the continued difficulty in communicating, Trooper Rost contacted the United States Border Patrol on his cellular phone at approximately 12:20 a.m. to secure a Spanish-speaking interpreter. Trooper Rost explained his situation to a United

States Border Patrol representative. With no Border Patrol agent readily available, the representative told Trooper Rost he would be contacted shortly. Trooper Rost waited until 12:31 a.m., at which time he called again to confirm the arrangement.

At approximately 12:32 a.m., United States Border Patrol Agent William Mayer, stationed in Grand Forks, North Dakota, contacted Trooper Rost. Trooper Rost asked Agent Mayer to confirm Torres–Monje's citizenship and to seek consent to search the Lumina. After handing the cellular phone to Torres–Monje, he and Agent Mayer engaged in a three (3) minute conversation entirely in Spanish. Torres–Monje admitted to being in the United States illegally and gave his verbal consent to search the vehicle. When Trooper Rost got the phone back, Agent Mayer relayed the information given to him by Torres–Monje. Next, Trooper Rost took the telephone to Rivera–Rocha, who remained in the front-passenger seat of the Lumina. Agent Mayer and Rivera–Rocha engaged in a two (2) minute conversation entirely in Spanish. Rivera–Rocha also admitted to being in the United States illegally. Agent Mayer then requested that both Torres–Monje and Rivera–Rocha be taken into administrative custody on his behalf, which Trooper Rost did. Agent Mayer testified that he had no intention to pursue criminal charges that evening. Instead, the defendants were picked up on an administrative arrest for being in the country illegally. Agent Mayer said it was his intention to have the defendants picked up by Border Patrol agents the next day for processing on an administrative violation.

After a brief roadside search, and the use of drug dogs, the Lumina was impounded and a state search warrant was secured. A subsequent search revealed six packages of methamphetamine, with a total weight of over six pounds, located behind the front left headlight in the left front fender area of the Lumina. Torres–Monje and Rivera–Rocha seek to suppress the fruits of the search, as well as the statements elicited. The Defendants raise two points of contention under the Fourth and Fifth Amendments respectively: (1) Trooper Rost was not permitted to ask questions regarding immigration status without reasonable suspicion and (2) either Trooper Rost or Agent Mayer was required to issue *Miranda* warnings to Torres–Monje prior to questioning.

## II. *LEGAL DISCUSSION*

### A. *FOURTH AMENDMENT*

■ The Constitution guarantees the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. *United States v. Fuse*, 391 F.3d 924, 927 (8th Cir.2004). A traffic stop constitutes a seizure within the meaning of the Fourth Amendment. *Id.* (quoting *United States v. Martinez*, 358 F.3d 1005, 1009 (8th Cir.2004) (citing *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979)). Thus, the principles of *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), govern such stops. *See Fuse*, 391 F.3d 924, 927. "[A] traffic 'stop must be supported by at least a reasonable, articulable suspicion that criminal activity' has occurred or is occurring." *Id.* (citations omitted).

■ In this case, the Defendants do not challenge the validity of the traffic stop. It is clear that a traffic violation creates probable cause to stop the driver of the vehicle. *United States v. Linkous*, 285 F.3d 716, 719 (8th Cir.2002) (citing *United States v. Barry*, 98 F.3d 373, 376 (8th Cir.1996) (quoting *United States v. Barahona*, 990 F.2d 412, 416 (8th Cir. 1993))). Upon making a valid traffic stop,

an officer may "conduct an investigation reasonably related in scope to the circumstances that initially prompted the stop." *United States v. McCoy,* 200 F.3d 582, 584 (8th Cir.2000) (citing *United States v. Bloomfield,* 40 F.3d 910, 915 (8th Cir. 1994)). It is well-established that as part of a reasonable investigation, an officer "may request the driver's license and registration, request that the driver step out of the vehicle, request that the driver wait in the patrol car, conduct computer inquiries to determine the validity of the license and registration, conduct computer searches to investigate the driver's criminal history and to determine if the driver has outstanding warrants, and make inquiries as to the motorist's destination and purpose." *United States v. Jones,* 269 F.3d 919, 924 (8th Cir.2001) (citations omitted). This may also include similar questioning of the vehicle's passengers. *See United States v. Linkous,* 285 F.3d 716, 719 (8th Cir.2002). An officer may detain the driver and passenger as long as reasonably necessary to conduct these activities and to issue a warning or citation. *United States v. Jones,* 269 F.3d 919, 925 (8th Cir.2001) (citing *United States v. Wood,* 106 F.3d 942, 945 (10th Cir.1997)). Once the officer has completed these activities, the traffic stop is over, but not until that time. *See id.* (citing *United States v. White,* 81 F.3d 775, 778 (8th Cir.1996) (stating that upon return of documentation and an explanation of the warning citation, the traffic stop ends); *United States v. Bloomfield,* 40 F.3d 910, 916 (8th Cir.1994) (stating that the reasonable scope of the initial traffic stop extends to the moment after the return of documents when the officer asked if he could search the car)). In other words, "if a defendant is detained incident to a traffic stop, the officer does not need reasonable suspicion to continue the detention until the purpose of the traffic stop has been completed." *United*

*States v. Bueno,* 443 F.3d 1017, 1025 (8th Cir.2006).

■■ Once the purpose of the traffic stop has been completed, an officer can lengthen the stop, or expand the scope of the stop, only with a reasonable, articulable suspicion needed to justify further detention. *See United States v. Jones,* 269 F.3d 919, 925–26 (8th Cir.2001). For example, "[i]f the responses of the [driver] and the circumstances give rise to suspicions unrelated to the traffic offense, and officer may broaden his inquiry and satisfy those suspicions." *United States v. Barragan,* 379 F.3d 524, 529 (8th Cir.2004) (quoting *United States v. Barahona,* 990 F.2d 412, 416 (8th Cir.1993)). The officers suspicion must be based upon "particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed." *Jones,* 269 F.3d 919, 927 (internal quotations omitted). In determining whether reasonable suspicion exists, the Court must consider the totality of the circumstances. In doing so, the court may consider any added meaning that certain conduct might suggest to experienced law enforcement officers in the field, trained in the observation of criminal activity. *Id.* (citing *United States v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)).

Rivera–Rocha contends that Trooper Rost prolonged the length of the traffic stop, and expanded the scope of the traffic stop by questioning Torres–Monje and Rivera–Rocha regarding their immigration status. Citizenship, Rivera–Rocha contends, is irrelevant and immaterial to the initial purpose of the traffic stop, that being a speeding violation. Rivera–Rocha contends that the Fourth Amendment demands reasonable, articulable suspicion prior to making such an inquiry. The Court disagrees. The recent United

States Supreme Court case of *Muehler v. Mena,* 544 U.S. 93, 125 S.Ct. 1465, 161 L.Ed.2d 299 (2005), is illustrative.

In *Muehler,* law enforcement officers executed a search warrant on a residence with suspected ties to gang-related activity. 544 U.S. 93, 95–96, 125 S.Ct. 1465, 161 L.Ed.2d 299. When the warrant was executed, the plaintiff, Iris Mena, was in the residence. Mena, along with three others, was detained and led to a converted garage to await completion of the search. All four detainees were questioned about their names, dates of birth, places of birth, and immigration status. Mena filed an action under 42 U.S.C. § 1983 alleging a violation of her Fourth Amendment rights. *Id.* at 97, 125 S.Ct. 1465. A jury awarded Mena damages, finding that her detention was carried out with unreasonable force[1] and for an unreasonable length of time. The Ninth Circuit Court of Appeals affirmed. In doing so, the Ninth Circuit held that "the questioning of Mena about her immigration status constituted an independent Fourth Amendment violation." *Id.*

The United States Supreme Court granted certiorari and reversed. *Muehler,* 544 U.S. 93, 97, 125 S.Ct. 1465, 161 L.Ed.2d 299. The Supreme Court examined the Ninth Circuit holding and stated as follows.

This holding, it appears, was premised on the assumption that the officers were required to have independent reasonable suspicion in order to question Mena concerning her immigration status because the questioning constituted a discrete Fourth Amendment event. But the premise is faulty. We have "held repeatedly that mere police questioning does not constitute a seizure." *Florida*

*v. Bostick,* 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991); *see also INS v. Delgado,* 466 U.S. 210, 212, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984). "[E]ven when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual; ask to examine the individual's identification; and request consent to search his or her luggage." *Bostick* supra, at 434–35, 111 S.Ct. 2382 (citations omitted). As the Court of Appeals did not hold that the detention was prolonged by the questioning, there was no additional seizure within the meaning of the Fourth Amendment. Hence, the officers did not need reasonable suspicion to ask Mena for her name, date and place of birth, or immigration status.

*Id.* at 100–101, 125 S.Ct. 1465. The Supreme Court concluded that, "the officer's questioning of Mena did not constitute an independent Fourth Amendment violation." *Id.* at 102, 125 S.Ct. 1465.

 Under the current state of the law, it is clear that no Fourth Amendment violation occurred by way of Trooper Rost's questioning. A traffic violation of any kind permits an officer to "seize" a vehicle by way of a traffic stop. *See United States v. Linkous,* 285 F.3d 716, 719 (8th Cir.2002). Trooper Rost witnessed the Lumina traveling 72 miles per hour in a 60 mile-per-hour zone and initiated a traffic stop. It is clear under the current state of the law and Supreme Court precedent that an officer may then conduct a reasonable investigation, to include requesting the driver's license and registration, requesting that the driver step out of the vehicle, requesting that the driver wait in the patrol car, conducting computer inquiries to deter-

---

1. Mena was handcuffed during the detention. *Muehler v. Mena,* 544 U.S. 93, 96, 125 S.Ct. 1465, 161 L.Ed.2d 299 (2005).

mine the validity of the license and registration, conducting computer searches to investigate the driver's criminal history and to determine if the driver has outstanding warrants, and making inquiries as to the motorist's destination and purpose. *See United States v. Jones,* 269 F.3d 919, 924 (8th Cir.2001).

■ In this case, Trooper Rost asked Torres–Monje for his driver's license, vehicle registration, and insurance card. Similar inquiries can be made of the vehicle's passengers. *See United States v. Linkous,* 285 F.3d 716, 719 (8th Cir.2002). Trooper Rost also asked Rivera–Rocha for identification. It is clear under the current state of the law and Supreme Court precedent that a reasonable investigation can also include questioning the detainees about their immigration status. *See Muehler v. Mena,* 544 U.S. 93, 100–101, 125 S.Ct. 1465, 161 L.Ed.2d 299 (2005). This line of questioning is permitted so long it does not prolong the otherwise valid detention. A traffic stop is not over until the purpose of the stop is completed. *See United States v. Bueno,* 443 F.3d 1017, 1025 (8th Cir.2006). Trooper Rost asked Torres–Monje and Rivera–Rocha if they had green cards or resident alien cards, to which they responded "no." This question was asked prior to the issuance of a warning ticket and the question did not prolong the traffic stop. No issuance of a warning ticket would be made prior to running computer checks and questioning the driver. Trooper Rost had yet to complete either of these prerequisites. Thus, the purpose of the traffic stop had not been completed, nor could it have been. Any delay incurred as a result of that single question concerning immigration status was, at most, *de minimis. See United States v. Martin,* 411 F.3d 998, 1002 (8th Cir.2005) (finding a two-minute delay to a routine traffic stop to conduct a canine sniff to be a *de minimis* intrusion and thus not in violation of the Fourth Amendment).

In summary, the record does not support a finding that the traffic stop was unreasonably prolonged so as to trigger the Fourth Amendment. The Court expressly finds that Trooper Rost's questions concerning the driver and passenger's immigration status was permissible under the current state of the law. The testimony of Trooper Rost was credible and forthright.

## B. *FIFTH AMENDMENT*

■ The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend V. To that end, "[w]hen taken into custody for questioning, an individual must be advised of the rights to be free from compulsory self-incrimination, and to the assistance of counsel." *United States v. Black Bear,* 422 F.3d 658, 661 (8th Cir.2005) (citing *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)). *"Miranda* warnings are required only where a person is deemed to be in custody." *Id.* (citing *Oregon v. Mathiason,* 429 U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977)).

■ The ultimate inquiry is whether there was a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. *United States v. LeBrum,* 363 F.3d 715, 720 (8th Cir. 2004) (quoting *California v. Beheler,* 463 U.S. 1121, 1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983)). "Two discrete inquiries are essential to the determination: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave." *Id.* (quoting *Thompson v. Keohane,* 516 U.S. 99, 112, 116 S.Ct. 457, 133 L.Ed.2d

383 (1995)). It is well-established that the Court must consider the totality of the circumstances based "on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." *Id.* (quoting *Stansbury v. California,* 511 U.S. 318, 322–23, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994)).

Torres–Monje and Rivera–Rocha contend that Trooper Rost and Agent Mayer violated *Miranda* by failing to advise them of their right to be free from self-incrimination and to the assistance of counsel. Both contend that they were "in custody" for purposes of *Miranda* as they were not free to leave and, therefore, should have been Mirandized prior to questioning. Failure to do so, the Defendants allege, negates the consent to search the Lumina, and should result in the suppression of the evidence and the statements elicited. Torres–Monje further alleges that any consent given on his part was involuntary.

 It is well-established that *Miranda* warnings are not needed for persons detained for a *Terry* stop. *United States v. Pelayo–Ruelas,* 345 F.3d 589, 592 (8th Cir.2003) (citing *United States v. McGauley,* 786 F.2d 888, 890 (8th Cir. 1986)). The Eighth Circuit has rejected the "broad contention that a person is in custody for *Miranda* purposes whenever a reasonable person would not feel free to leave." *Id.* For example, "[o]ne is not free to leave a *Terry* stop until the completion of a reasonably brief investigation, which may include limited questioning." *Id.* "But most *Terry* stops do not trigger the detainee's *Miranda* rights." *Id.* By way of extension, "the full panoply of protections prescribed by *Miranda* does not apply during the course of a traffic stop where the motorist is not subjected to the functional equivalent of formal arrest." *United States v. Martin,* 411 F.3d 998, 1003 (8th Cir.2005) (citing *Berkemer v. McCarty,* 468 U.S. 420, 440–42, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984)).

The Eighth Circuit recently articulated the factors a court should consider in determining the voluntariness of a consent. "[T]he question whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." *Schneckloth v. Bustamonte,* 412 U.S. 218, 227, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Factors relevant to the voluntariness of a defendant's consent include: (1) the defendant's age; (2) the defendant's general intelligence and education; (3) whether the defendant was intoxicated or under the influence of drugs when he consented; (4) whether the defendant consented after being informed of his right to withhold consent or of his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); (5) whether, because the defendant had been previously arrested, he was aware of the protections afforded to suspected criminals by the legal system; (6) whether the defendant was detained and questioned for a long or short time; (7) whether the defendant was threatened, physically intimidated, or punished by police; (8) whether the defendant relied upon promises or misrepresentations made by the police; (9) whether the defendant was in custody or under arrest when the consent was given; (10) whether the defendant was in a public or secluded place; and (11) whether the defendant objected to the search or stood by silently while the search occurred. *United States v. Chaidez,* 906 F.2d 377, 381 (8th Cir.1990).

*United States v. Perry,* 437 F.3d 782, 785 (8th Cir.2006). The Eighth Circuit has

never held that a request to search must be preceded by *Miranda* warnings, or that a lack of *Miranda* warnings invalidates a consent to search. *United States v. Payne,* 119 F.3d 637, 643 (8th Cir.1997). Instead, it is simply a factor the court may consider in determining the voluntariness of the consent.

 In this case, neither Torres–Monje nor Rivera–Rocha were subjected to a detention equivalent to formal arrest. Although neither was free to leave by virtue of the traffic stop, that alone does not trigger *Miranda.* A traffic stop entitles the officer to conduct a brief and reasonable investigation which may include questioning. Only when the traffic stop becomes the equivalent of a full custodial arrest are *Miranda* warnings required. Trooper Rost and Agent Mayer questioned Torres–Monje and Rivera–Rocha during the course of completing the underlying traffic stop and the issuance of a warning ticket. Neither individual was told that the detention would be anything but temporary. Border Patrol Agent Mayer testified that it was his intention to have the defendants arrested and taken into administrative custody and to be processed through the administrative process rather than the criminal process. The Court finds that the testimony of Agent Mayer was also credible and straightforward. Under the totality of the circumstances, the Court finds that the Defendants were not "in custody" for purposes of *Miranda.* Therefore, no such warnings were required prior to questioning.

 Despite the lack of *Miranda* warnings, the Court finds that Torres–Monje voluntarily consented to the search of the Lumina. In reaching that conclusion, the Court has considered all of the factors outlined by the Eighth Circuit. Most notably, Torres–Monje was not under the influence of alcohol or drugs; he was not threatened, physically intimated or punished by Trooper Rost or Agent Mayer; he did not rely upon promises or misrepresentations made by Trooper Rost or Agent Mayer; he did not object while the search of the Lumina was conducted; he was of a suitable age and intellect to appreciate the consequences of such a consent; and he had only been stopped for a period of less than thirty (30) minutes at the time consent was given. The testimony of Trooper Rost and Border Patrol Agent Mayer was credible. It is apparent that Torres–Monje speaks little English. However, Trooper Rost made no attempt to secure consent prior to contacting the United States Border Patrol. Torres–Monje gave consent after a brief conversation with Agent Mayer conducted in Spanish. Based on the totality of the circumstances, it cannot be said that Torres–Monje's consent was coerced or involuntary.

### III. CONCLUSION

For the reasons outlined above, Torres–Monje's Motion to Suppress (Docket No. 31) and Rivera–Rocha's (Docket No. 27) Motion to Suppress are **DENIED.** Trial in this matter shall be scheduled to commence on Tuesday, June 27, 2006, in Bismarck, North Dakota. A three (3) day trial is anticipated.

**IT IS SO ORDERED.**