_____

No. 96-1941
_____

United States of America,          *
                                   *
        Plaintiff-Appellee,        *
                                   *  Appeal from the United States
     v.                            *  District Court for the
                                   *  Eastern District of Missouri.
Paul Richard Barry,                *
                                   *
        Defendant-Appellant.       *

_____

Submitted:  September 13, 1996

Filed:  October 17, 1996
_____

Before FAGG, LAY, and MURPHY, Circuit Judges.

_____

LAY, Circuit Judge.


    Paul Richard Barry was convicted of various drug and firearm offenses
under 18 U.S.C. §§ 922(g)(1) and 924(c)(1), 21 U.S.C. §§ 841 and 844, and
26 U.S.C. §§ 5861(d) and 5871.  Prior to trial, the district court,[1] based
on the magistrate judge's recommendation,[2] denied Barry's motion to dismiss
the indictment and to suppress certain evidence.  The district court
entered judgment pursuant to the jury verdict and sentenced Barry to
imprisonment for an aggregate term of 190 months.  Barry appeals his
conviction as it relates to all but one count.[3]  We affirm.

_____

    [1]The Honorable Carol E. Jackson, United States District Court
Judge for the Eastern District of Missouri.

    [2]The Honorable David D. Noce, United States Magistrate Judge
for the Eastern District of Missouri.

    [3]Barry does not appeal his conviction for possession of
methamphetamine.

**FACTS**

Counts I and II stem from a traffic stop occurring on March 15, 1995, after a Leadington, Missouri police officer observed Barry's vehicle violate a red light. The officer arrested Barry for operating with a suspended driver's license, and arranged to have Barry's vehicle impounded. The officer performed a pat-down search of Barry, uncovering .05 gram of methamphetamine, and he performed an inventory search of Barry's vehicle, uncovering a loaded .25 caliber semiautomatic pistol under the front seat armrest. Barry was a previously convicted felon at the time of the arrest.

Counts III through VII arise from a traffic stop occurring at three o'clock in the morning on May 5, 1995, after a different Leadington police officer observed Barry's vehicle operating erratically.

Officer Darrell Bennett recognized Barry from a prior court appearance for driving with a suspended license, and asked Barry to present his driver's license. While Barry fumbled for his license, Officer Bennett noticed three packets containing white powder in Barry's wallet. Barry admitted he had been drinking, and complied with Officer Bennett's directive to exit the vehicle to perform sobriety tests. Barry failed four sobriety tests.

After Barry failed the tests, Officer Bennett examined Barry's wallet more closely. Officer Bennett testified that on prior occasions he had seen packets of white powder similar to those in Barry's wallet, and that on those occasions the powder turned out to be methamphetamine or cocaine. Officer Bennett arrested Barry for driving while intoxicated ("DWI") and possession of illegal drugs.

Officer Bennett then performed an inventory search of Barry's

-2-

vehicle as part of his department's customary impoundment procedure. Bennett found two vials of cocaine and a loaded, unregistered, sawed-off shotgun in the unlocked glove compartment. The officer also found scales, containers of marijuana and cocaine, spoons, a pipe, a hypodermic needle, and a mirror with white, powdery residue. The cumulative weight of the cocaine in Barry's vehicle was 459 grams and the weight of marijuana was about 710 grams. The packets in Barry's wallet contained 1.05 grams of cocaine. Officer Bennett transported Barry to the Leadington Police Department, where Barry provided a breath sample revealing that his blood alcohol content was .022%.

At various points in the proceedings below, Barry moved the district court to suppress evidence seized during the May 5 inventory search of his vehicle, to dismiss the charges of possession as a felon, and for judgment of acquittal as to carrying a firearm in relation to drug trafficking.

## SUPPRESSION OF EVIDENCE

Barry challenges the district court's failure to suppress the evidence seized after the May 5 traffic stop, asserting the stop and subsequent arrest were merely a pretext for the vehicle search. We review de novo whether an officer's stop is based upon reasonable suspicion and whether the arrest is based upon probable cause. Ornelas v. United States, 116 S.Ct. 1657, 1663 (1996). We review the district court's findings concerning the underlying historical facts under the clearly erroneous standard. Id.

It is undisputed that Officer Bennett observed Barry operating his vehicle erratically and crossing the centerline at three o'clock in the morning on May 5. Officer Bennett's uncontradicted testimony at the suppression hearing amply supports the magistrate

judge's finding.[4]

Failing to operate one's vehicle within a single lane violates Missouri law.  Mo. Rev. Stat. § 304.015.  Driving while intoxicated also violates Missouri law.  Mo. Rev. Stat. § 577.010.1.  Officer Bennett witnessed Barry violate the former and had reasonable suspicion based on Barry's driving to believe Barry may also have been violating the latter. We recently observed "[i]t is well established that a traffic violation-- however minor--creates probable cause to stop the driver of a vehicle." United States v. Barahona, 990 F.2d 412, 416 (8th Cir. 1993); see also United States v. Rehkop, No. 95-3446, 1996 WL 526239, at *4 (8th Cir. Sept. 18, 1996) (holding officer had reasonable belief that a driver was intoxicated where the driver remained at a traffic light through three rotations and weaved several times within his own lane).  We conclude that Officer Bennett lawfully stopped Barry's vehicle.

Barry contends his DWI arrest was mere pretext to allow Officer Bennett to search his vehicle without a warrant.  This argument fails. While pretextual traffic stops or arrests may violate the Fourth Amendment, as long as a police officer does no more than he or she is legally permitted and objectively authorized to do, the officer's stop or arrest is constitutional.  United States v. Cummins, 920 F.2d 498, 501 (8th Cir. 1990), cert. denied, 502 U.S. 962 (1991).

---

[4]Officer Bennett testified in relevant part as follows:

I noticed him coming off the highway, he was a little wobbly, but I couldn't see how he was driving so, I couldn't make any judgments right there.  So, I went ahead and stayed in my position, he came on around on Highway 32, headed west, passed me; the one lane turns into divided lanes; he crossed the center line a couple of times, went ahead, was gonna make a right turn, made it a little early, hit the shoulder and proceeded on.

Tr. of Evidentiary Hr'g, at 31.

The question then turns on whether probable cause existed for Barry's arrest.  "In determining whether probable cause exists to make a warrantless arrest, the court looks to the totality of the circumstances to see whether a prudent person would believe the individual had committed or was committing a crime."  United States v. Segars, 31 F.3d 655, 659 (8th Cir. 1994), cert. denied, 115 S. Ct. 772 (1995).  Here, Barry drove erratically, admitted to Officer Bennett he had been drinking, and failed multiple sobriety tests.  A reasonable person could conclude Barry was driving while intoxicated; under the circumstances, we find Officer Bennett lawfully arrested Barry.[5]  Because we conclude there was probable cause to arrest Barry for DWI without regard to any cocaine in Barry's wallet, we need not reach Barry's argument that the magistrate judge should have discredited Officer Bennett's testimony that Bennett observed the cocaine packets in Barry's wallet before arresting him.

A police officer may conduct a warrantless inventory search of a vehicle the officer is lawfully impounding.  Colorado v. Bertine, 479 U.S. 367, 370-74 (1987).  Officer Bennett conducted such a search of Barry's vehicle and in doing so discovered the shotgun

---

[5]That Barry's breath test after the arrest at the police department revealed a blood alcohol content of only .022% is inapposite to whether there was probable cause immediately before the arrest to conclude Barry was driving while intoxicated.

Additionally, intoxication with drugs other than alcohol, or a combination of drugs and alcohol, also would support conviction under Missouri's DWI law.  See Mo. Rev. Stat. § 577.001.2. ("[A] person is in an 'intoxicated condition' when he is under the influence of alcohol, a controlled substance, or drug, or any combination thereof.").  In this vein Barry supports his pretext argument by asserting that officers "neglected or declined to obtain a blood sample" to establish whether any other drug was in his system. Appellant's Br., at 22.  However, the court notes with disfavor Barry's failure also to disclose Officer Bennett's uncontested testimony that Barry was several times offered, but refused, a urine test, which also would have established whether he had ingested other drugs. See Tr. of Evidentiary Hr'g, at 43-44; Tr. of Trial, vol. I, at 105.

and drugs.  We find no error in the district court's denial of Barry's motion to suppress this evidence.

**CARRYING FIREARM IN RELATION TO DRUG TRAFFICKING**

Barry challenges his conviction of violating 18 U.S.C. § 924(c)(1) based on the Supreme Court's decision in Bailey v. United States, 116 S.Ct. 501 (1995).  Reviewing de novo the district court's conclusion that Bailey affords Barry no relief, we agree Bailey is inapplicable here.

Bailey narrowly defines "use" under § 924(c)(1) as requiring proof that the defendant "actively employed the firearm during and in relation to the predicate crime." 116 S.Ct. at 509.  However, Barry was indicted for carrying a firearm, not for using a firearm, and Bailey did not address the alternate "carry" prong of § 924(c)(1).  Barry nevertheless contends that because he did not have the shotgun on his person, he did not "carry" the shotgun.  We disagree.

Before Bailey, we recognized that "the common usage of 'carries' include[s] 'carries in a vehicle.'"  United States v. Freisinger, 937 F.2d 383, 387 (8th Cir. 1991).  Notwithstanding Barry's argument, Bailey does not require us to abandon Freisinger.  Indeed, after the parties submitted their arguments in this matter, we decided United States v. Willis, 89 F.3d 1371 (8th Cir.), cert. denied, No. 96-5793, 1996 WL 514275 (1996).  Willis held the Freisinger standard survived Bailey.  Id. at 1379.  Barry's transportation of the shotgun in his glove compartment  satisfies the "carry" prong of § 924(c)(1).

Barry also challenges the district court's denial of his motion for acquittal based on sufficiency of the evidence regarding whether he carried the firearm "in relation to" drug trafficking.  We will narrowly review a district court's denial of a motion for

acquittal, viewing the evidence in the light most favorable to the verdict and giving the government the benefit of reasonable inferences drawn from the evidence.  United States v. Cunningham, 83 F.3d 218, 222 (8th Cir. 1996).

The phrase "in relation to" in § 924 (c)(1) is "expansive," requiring that the firearm have some purpose or effect regarding drug trafficking and that it facilitate or have the potential to facilitate drug trafficking, as opposed to being present merely as the result of accident or coincidence.  Smith v. United States, 113 S.Ct. 2050, 2058-59 (1993).

Here, the jury could reasonably infer that Barry's sawed-off shotgun had the potential to facilitate Barry's possession and intended sale of cocaine and marijuana.  The shotgun was loaded, unregistered, and concealed with two vials of cocaine in Barry's unlocked glove compartment.  He transported the shotgun in the same passenger compartment in which he transported nearly $50,000 in illegal drugs.  There was ample evidence supporting the jury's verdict that Barry carried the shotgun "in relation to" drug dealing.

## COMMERCE CLAUSE

Finally, Barry assigns error to the district court's denial of his motion to dismiss the two counts of possession of a firearm as a felon under 18 U.S.C. § 922(g)(1).  He relies on United States v. Lopez, 115 S.Ct. 1624 (1995), for the proposition that the Commerce Clause precludes application of § 922(g)(1) to his firearm possession.  We reject Barry's argument.  In United States v. Bates, we held that § 922(g)(1) was constitutionally applied to a defendant who possessed a shotgun that had traveled in interstate commerce.  77 F.3d 1101 (8th Cir.), cert. denied, No. 96-5184, 1996 WL 411183 (1996).  Here, the parties  stipulated that the firearms at issue traveled in interstate commerce.  For the reasons

-7-

articulated in Bates, "we find the application of section 922(g)(1) to [Barry's] conduct eminently constitutional." Id. at 1104.

We affirm the district court's judgment against Barry.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.