**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 24 2000**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

DAVID CRAIG CARLSEN,

      Plaintiff-Appellant,

v.

TIM GIL DURON, BRIAN COY,
individually, and in their capacity
as Logan City Police Officers;
SCOTT L. WYATT, in his capacity
as Logan City Prosecutor; JOHN AND
JANE DOE I through XX, designated
as unknown defendants,

      Defendants,

    and

LEM R. EARL, individually, and
in his capacity as a Logan City
Police Officer; KENT HARRIS,

      Defendants-Appellees.

No. 99-4065
(D.C. No. 93-CV-67-G)
(D. Utah)

---

**ORDER AND JUDGMENT** [*]

---

Before **BRORBY** , **ANDERSON** , and **MURPHY** , Circuit Judges.

---

[*]     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

## I. Background

Plaintiff David Craig Carlsen, appearing *pro se*, appeals from a judgment entered for the defendants-appellees, police officers in Logan City, Utah, following a bench trial of his civil rights action under 42 U.S.C. § 1983. Defendant Kent Harris and another Logan City police officer, Bryan Low, who is not a defendant, stopped Carlsen in his automobile at approximately 1:20 a.m. on September 13, 1992, while he was driving through downtown Logan City toward his home. Officers Harris and Low testified that Carlsen made a wide right hand turn in violation of Utah Stat. § 41-6-66(1); was driving 20 m.p.h. in a 30 m.p.h. speed zone; and tapped on his brakes twice to slow, even though there was no stop sign or other reason to brake. The officers testified that these actions caused them to suspect the driver was intoxicated or under the influence of alcohol.

Officers Harris and Low pulled Carlsen over. Officer Harris testified Carlsen was smoking a cigarette and appeared tired or groggy. Carlsen produced his drivers' license and registration. Officer Harris asked him if he had been

drinking. The officers testified that in response, Carlsen got angry, got out of his vehicle and demanded he be given a breathalyser test. Officer Harris first administered field sobriety tests, which Carlsen failed according to Officers Harris and Low. Defendant Lem R. Earl, a supervising police officer, and two other Logan City police officers were present as observers during portions of the traffic stop.

At the conclusion of the field sobriety tests, Carlsen was handcuffed and arrested for driving under the influence of alcohol. He was taken to the county jail, and immediately given a breathalyser test. This test indicated he had a blood alcohol level of zero percent. The officers released Carlsen from handcuffs; drove him back to his vehicle; returned his drivers' license and registration and did not issue him any traffic or other citation.

At trial, Carlsen denied that he made a wide right turn, testified that he was driving 25 to 30 m.p.h. and said he braked twice to slow on a slight decline in the road. He denied that he volunteered or demanded to take a breathalyser test prior to his arrest and denied that he failed any of the field sobriety tests. He testified that he has complained in the past about Logan City police officers harassing him, and that the Logan City Police Department is hostile toward his family.

The trial court, however, credited all of the police officers' testimony, and found that they had probable cause to stop Carlsen, to administer the field

sobriety tests, and to arrest him for driving under the influence of alcohol. The district court further found that Carlsen feigned intoxication in order to provoke the defendants into arresting him. The district court ruled that the defendants did not violate any of Carlsen's constitutional rights.

On appeal, Carlsen contends that several of the district court's factual findings are not supported by the evidence; that the defendants lacked probable cause to stop his vehicle; that the stop was an unconstitutional pretext stop; and that his continued detention to perform field sobriety tests exceeded the original scope of the traffic stop. He also challenges several pretrial rulings.

## II. Analysis

### A. The Traffic Stop and Arrest

We review *de novo* the district court's determination of probable cause and reasonable suspicion, *see Ornelas v. United States*, 517 U.S. 690, 697 (1996), while reviewing its underlying findings of historical fact for clear error. *See United States v. Barron-Cabrera*, 119 F.3d 1454, 1457 (10th Cir. 1997). To determine the reasonableness of an investigative vehicle stop, "we make a dual inquiry, asking first 'whether the officer's action was justified at its inception,' and second 'whether it was reasonably related in scope to the circumstances which justified the interference in the first place.'" *United States v. Hunnicutt*, 135 F.3d 1345, 1348 (10th Cir. 1998) (quoting *Terry v. Ohio*, 392 U.S. 1, 20

-4-

(1968)).  "[A]n investigative detention must 'last no longer than is necessary to effectuate the purpose of the stop.'" *United States v. Patten*, 183 F.3d 1190, 1193 (10th Cir. 1999) (quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983)).  It must be temporary, and its scope "must be carefully tailored to its underlying justification." *United States v. Gutierrez-Daniez*, 131 F.3d 939, 942 (10th Cir. 1997)).  "A variety of factors may contribute to the formation of an objectively reasonable suspicion of illegal activity." *Hunnicutt*, 135 F.3d at 1349.

### 1.  Credibility Determinations

Carlsen first asserts that several of the district court's factual findings were clearly erroneous, including its finding that he failed the field sobriety tests and that he feigned intoxication in order to mislead the officers.  We review the district court's findings of fact for clear error, giving "due regard . . . to the opportunity of the trial court to judge [ ] the credibility of the witnesses." Fed. R. Civ. P. 52(a).  "A finding of fact is not clearly erroneous unless it is without factual support in the record, or if the appellate court, after reviewing all the evidence, is left with the definite and firm conviction that a mistake has been made." *Las Vegas Ice & Cold Storage Co. v. Far West Bank*, 893 F.2d 1182, 1185 (10th Cir. 1990) (quotation omitted).  After thorough review of the record, we conclude that the district court's findings of fact are not clearly erroneous.

## 2. The Initial Stop

Because the trial court credited Officers Harris' and Low's testimony that they observed Carlsen make an improper, wide right turn, in violation of a Utah traffic law, the initial stop of Carlsen's car was reasonable and supported by probable cause.  *See Hunnicutt*, 135 F.3d at 1348.  Moreover, Carlsen's lane violation, slow driving and braking provided Officer Harris with reasonable suspicion that he was driving while under the influence of alcohol, also a violation of Utah law.

> Our cases make clear that the government need not show a violation actually occurred to justify an initial traffic stop.  An initial traffic stop is valid under the Fourth Amendment not only if based on an observed traffic violation, but also if the officer has a reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring.

*Id*.

Because Officer Harris observed the lane violation and had reasonable articulable suspicion that Carlsen might be driving impaired, he was justified in questioning Carlsen and detaining him to determine whether he had been drinking.

Carlsen argues Officer Harris lacked probable cause to stop his vehicle because he was never actually given a traffic ticket for the wide turn violation. The officers' observation of Carlsen's traffic violation was, however, sufficient grounds to stop his vehicle, even though they did not ultimately issue Carlsen

-6-

a ticket for the violation. *See United States v. Dhinsa*, 171 F.3d 721, 725-26 (2d Cir. 1998) (observation of traffic violation justifies stop even though the observation did not motivate the stop and no traffic summons was issued); *see also Hunnicutt*, 135 F.3d at 1348 (noting that the government need not show a violation actually occurred).

Carlsen also cites to *Sandy City v. Thorsness*, 778 P.2d 1011, 1012-13 (Utah Ct. App. 1989), which held that driving on the inside lane, at 20 m.p.h. in a 40 m.p.h. speed zone at 1:30 a.m. does not constitute reasonable suspicion to believe the driver is under the influence of alcohol. Unlike the facts in *Sandy City*, Officer Harris did observe a traffic violation, which provided an independent and adequate basis to stop Carlsen.

### 3. Pretext

Carlsen claims that the stop was an unconstitutional pretext stop. However, Officer Harris did have reasonable, articulable suspicion that a traffic violation had occurred. "It is irrelevant that the officer may have had other subjective motives for stopping the vehicle." *Hunnicutt*, 135 F.3d at 1348. "[T]he constitutional reasonableness of traffic stops [does not] depend[ ] on the actual motivations of the individual officers involved." *Whren v. United States*, 517 U.S. 806, 813 (1996).

## 4. Field Sobriety Tests

Carlsen contends that Officer Harris violated his Fourth Amendment rights by detaining him beyond the scope of the initial stop by requiring him to submit to field sobriety tests. However, Officer Harris' initial stop was based in part upon his reasonable suspicion that Carlsen was driving under the influence of alcohol. Thus, the officer was justified in detaining Carlsen in order to ascertain whether he was impaired. Carlsen's angry response to Officer Harris' questioning, coupled with his earlier traffic violation, slow driving and braking, did provide the requisite level of suspicion for Officer Harris to conduct field sobriety tests. *See Rogala v. District of Columbia*, 161 F.3d 44, 52 (D.C. Cir. 1998) (holding that only reasonable suspicion is required to conduct a field sobriety test because it is such a minimal intrusion on the driver); *see Hunnicutt*, 135 F.3d at 1348 (weaving across traffic lanes provided reasonable suspicion that defendant had violated statutes governing proper use of lanes or was driving under the influence of alcohol, to support traffic stop).

## 5. Probable Cause to Arrest

Carlsen argues that the police officers lacked probable cause to arrest him for driving under the influence of alcohol. In determining whether probable cause exists to make an arrest, the court examines whether the totality of the circumstances would lead a reasonable person to believe that an offense has been

committed. *See United States v. Vazquez-Pulido*, 155 F.3d 1213, 1216 (10th Cir. 1998). Carlsen notes that he did not smell of alcohol, did not slur his speech or otherwise behave intoxicated and denied that he had been drinking. Carlsen also challenges the admissibility and reliability of the Horizontal Gaze Nystagamus (HGN) field sobriety test and the reliability of the nine-step walk sobriety test.

Carlsen did not challenge the admissibility of the HGN before the district court, nor do we find that the district court committed clear error in admitting evidence of this test. "The trial judge has broad discretion . . . to determine reliability [of evidence] in light of the particular facts and circumstances of the particular case." *United States v. Charley*, 189 F.3d 1251, 1266 (10th Cir. 1999) (quotation omitted), *cert. denied*, 120 S. Ct. 842 (2000). The district court heard evidence concerning the administration of all of the field sobriety tests, and did not conclude that any of the tests were unreliable.

Although Carlsen denied that he had been drinking and the police did not detect any odor of alcohol, the district court did make the factual findings that he did make an improper lane change, drive in an unusual manner, become angry with the police, and fail the field sobriety tests. We conclude the totality of these circumstances was sufficient to establish probable cause to arrest Carlsen for driving under the influence. *See United States v. Barry*, 98 F.3d 373, 377

(8th Cir. 1996) (finding probable cause to arrest defendant for driving under the influence due to his erratic driving and failure to pass field sobriety tests).

## B.  Jury Trial

Carlsen next contends the district court erred in denying his Fed. R. Civ. P. 39(b) motion for a jury trial.  Rule 39(b) permits the district court, in its discretion, to order a jury trial notwithstanding the moving party's failure to make a timely jury demand.  A district court does not abuse its discretion by denying a Rule 39(b) motion when the "failure to make a timely jury demand results from nothing more than the mere inadvertence of the moving party." *Nissan Motor Corp. v. Burciaga*, 982 F.2d 408, 409 (10th Cir. 1992) (per curiam).  Here, Carlsen offered no excuse or explanation for his untimely request for a jury trial, nor did he make any attempt to demonstrate that his untimely jury demand was due to anything other than inadvertence or oversight.  Accordingly, the district court's denial of the Rule 39(b) motion was not an abuse of discretion.

## C.  Recusal

Carlsen contends the district court prejudged the issues and facts and, therefore, erred in not *sua sponte* disqualifying himself from presiding over this case under 28 U.S.C. § 455.  Section 455(a) provides that a federal judge must recuse himself in any proceeding where "his impartiality might reasonably be questioned," even in the absence of a motion.  Carlsen's allegations are primarily

based on the district court's prior grant of summary judgment in favor of defendants. Prior adverse rulings alone do not constitute grounds for disqualification. *See Green v. Branson*, 108 F.3d 1296, 1305 (10th Cir. 1997); *United States v. Cooley*, 1 F.3d 985, 993 (10th Cir. 1993). The judge's comments during the summary judgment proceedings and other pretrial proceedings do not "display a deep-seated favoritism or antagonism that would make fair judgment impossible," and, therefore, do not rise to the level of possible disqualification. *Liteky v. United States*, 510 U.S. 540, 555 (1994); *see also United States v. Young*, 45 F.3d 1405, 1415 (10th Cir. 1995).

## D. Motion to Amend Complaint

Carlsen contends the district court erred in denying his motion seeking to substitute Officer Low as a named defendant in place of the name "John Doe I." This motion was filed on the eve of trial, six years after Carlsen initiated this lawsuit. The district court did not abuse its discretion in denying this motion because the record indicates that Carlsen was aware of Officer Low's identity as one of his arresting officers at least as long ago as September 1994, and Carlsen did not satisfy the requirements of Fed. R. Civ. P. 15(c).

The judgment of the United States District Court for the District of Utah is AFFIRMED.  The mandate shall issue forthwith.

Entered for the Court

Michael R. Murphy
Circuit Judge