IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
March 21, 2018 Session

## STATE OF TENNESSEE v. SAMANTHA GADZO

**Appeal from the Circuit Court for Maury County**
**No. 25263     Stella L. Hargrove, Judge**

_____

### No. M2017-00646-CCA-R3-CD

_____

The Defendant, Samantha Gadzo, was indicted for driving under the influence of an intoxicant, driving under the influence per se, reckless driving, violation of the Due Care law, and failure to maintain her lane of travel. See T.C.A. §§ 55-10-401,-401(a)(2),-205; 55-8-136, -123. She filed a motion to suppress the evidence seized during the traffic stop, arguing that it was not supported by reasonable suspicion or probable cause.[1] Following a hearing, the trial court granted the Defendant's motion, which is the subject of this State appeal. Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, and NORMA MCGEE OGLE, JJ., joined.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Counsel; Brent A. Cooper, District Attorney General; and Adam Davis, Assistant District Attorney General, for the appellant, State of Tennessee.

Jonathan W. Turner, Franklin, Tennessee, for the Appellee, Samantha Gadzo.

## OPINION

At 11:44 on the evening of September 9, 2015, Tennessee State Trooper Trent Sutherland was on patrol and drove past the Defendant. He looked in his rear-view mirror and observed the Defendant "swerving in her lane." He turned around, followed the Defendant up to a light, and observed her "cross over the center dividing line" of traffic. Trooper Sutherland testified that the sole basis for stopping the Defendant was because she had "crossed the center line." Trooper Sutherland's patrol car was equipped

---

[1] The Defendant also challenged the admissibility of her statements made during the stop; however, this opinion is limited only to the lawfulness of the traffic stop.

with a recording device, which he activated approximately 30 seconds prior to the stop. The video was admitted into evidence and played for the court during the suppression hearing. After several field sobriety tests, the Defendant was arrested for the above offenses. Her blood alcohol content (BAC) was tested and later determined to be above the legal limit of .08%.

The Defendant filed a motion to suppress arguing that Trooper Sutherland did not have reasonable suspicion of criminal activity or probable cause to conduct the traffic stop. At the February 9, 2017 suppression hearing, Trooper Sutherland testified consistently with the above facts and said that he was approximately 100 to 150 feet behind the Defendant, had a "clear, unobstructed view" of the Defendant's vehicle, and that it was "dark, clear, [and] not raining" that night. He said that when he pulled her over and stated the reason for the stop, the Defendant confirmed that she had crossed the center dividing line. He testified that he did not notice anyone pull in front of the Defendant or any obstacles in the road that would cause her to cross over the center dividing line. Trooper Sutherland indicated where he believed the Defendant crossed the center dividing line in the video.[2]

On cross-examination, Trooper Sutherland testified that he had been working for approximately four months at the time of the Defendant's traffic stop and did not recall how many cases he had prosecuted before then. Asked whether he testified at a preliminary hearing that he was approximately 100 yards, not feet, from the Defendant when following her, Trooper Sutherland responded, "If that's what I said, yes, sir." He confirmed that he saw the Defendant's left tire cross between six to twelve inches over the center dividing line. The video recording was played twice more for the court.

In its ruling, the trial court stated that it was "inclined to give [the Defendant] a break and grant the motion to suppress." The trial court stated that it did not "question" Trooper Sutherland, but "due to the totality of the circumstances" and the evidence presented at the hearing, the court granted the Defendant's motion to suppress. The trial court granted the State's motion to dismiss, which is the subject of this appeal.

## ANALYSIS

The sole issue on appeal is whether the trial court erred in granting the Defendant's motion to suppress the evidence obtained after Trooper Sutherland's traffic stop of the Defendant. The State contends that the evidence preponderates against the

---

[2] The beginning timestamp of the video recording read 22:41:43 to which Trooper Sutherland testified that, due to the seasonal time change, it should have read 23:41:43, but he had not yet manually updated the clock.

trial court's conclusion that the totality of the circumstances did not give Trooper Sutherland reasonable suspicion for the traffic stop. The State asserts that Trooper Sutherland had probable cause and reasonable suspicion, and that his testimony was sufficient evidence that the Defendant committed dangerous traffic violations that justified the traffic stop. In response, the Defendant contends, and we agree, that the trial court properly granted her motion to suppress.

The standard of review applicable to suppression issues involves a mixed question of law and fact. State v. Garcia, 123 S.W.3d 335, 342 (Tenn. 2003). "A trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." State v. Williams, 185 S.W.3d 311, 314 (Tenn. 2006) (citing State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996)). The Tennessee Supreme Court explained this standard:

> Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact. The party prevailing in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence. So long as the greater weight of the evidence supports the trial court's findings, those findings shall be upheld.

Odom, 928 S.W.2d at 23. However, this court's review of a trial court's application of the law to the facts is de novo with no presumption of correctness. State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001) (citing State v. Crutcher, 989 S.W.2d 295, 299 (Tenn. 1999)). Here, the State bears the burden of showing that the evidence preponderates against the trial court's findings. Odom, 928 S.W.2d at 23; State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).

Both the Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution protect citizens from unreasonable searches and seizures. See U.S. Const. amend. IV; Tenn. Const. art. 1, § 7. A warrantless search or seizure is presumed unreasonable and evidence obtained as a result will be suppressed "unless the prosecution demonstrates by a preponderance of the evidence that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." Yeargan, 958 S.W.2d at 629 (citing Coolidge v. New Hampshire, 403 U.S. 443, 454-55 (1971)); see also State v. Berrios, 235 S.W.3d 99, 105 (Tenn. 2007).

In the context of a traffic stop, the Tennessee Supreme Court has confirmed that "a police officer's traffic stop of a motorist will pass constitutional muster if the officer has 'probable cause' to believe that the motorist has committed a traffic offense." State v.

Smith, 484 S.W.3d 393, 400 (Tenn. 2016) (citing State v. Vineyard, 958 S.W.2d 730, 736 (Tenn. 1997) (holding that officers' observation of a defendant's violations of traffic laws created probable cause to stop defendant)); see also United States v. Barry, 98 F.3d 373, 376 (8th Cir. 1996) (recognizing that even minor traffic violations create probable cause to stop the driver); Berrios, 235 S.W.3d at 105 (recognizing that, "[a]s a general rule, if the police have probable cause to believe a traffic violation has occurred, the stop is constitutionally reasonable" (citing Whren v. United States, 517 U.S. 806, 810 (1996)). "Articulating precisely what . . . 'probable cause' mean[s] is not possible." Ornelas v. United States, 517 U.S. 690, 695 (1996). Instead, "probable cause is a 'practical, nontechnical' concept." Smith, 484 S.W.3d at 400 (quoting State v. Jacumin, 778 S.W.2d 430, 432 (Tenn. 1989) (quoting Illinois v. Gates, 462 U.S. 213, 231 (1983)). Moreover, "probable cause exists when 'at the time of the [seizure], the facts and circumstances within the knowledge of the officers, and of which they had reasonably trustworthy information, are sufficient to warrant a prudent person in believing that the defendant had committed or was committing an offense.'" State v. Dotson, 450 S.W.3d 1, 50 (Tenn. 2014) (quoting State v. Echols, 382 S.W.3d 266, 277-78 (Tenn. 2012)). "If a police officer lacks probable cause to seize a motorist, he nevertheless may legitimately initiate a brief, investigatory traffic stop if he possesses a 'reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been or is about to be committed.'" Smith, 484 S.W.3d at 401 (quoting State v. Binette, 33 S.W.3d 215, 218 (Tenn. 2000) (citing Terry v. Ohio, 392 U.S. 1, 20-21 (1968); State v. Bridges, 963 S.W.2d 487, 492 (Tenn. 1997))).

The traffic stop in the present case stems from reckless driving, a violation of the Due Care law, and a failure to maintain the lane of travel. "Any person who drives any vehicle in willful or wanton disregard for the safety of persons or property commits reckless driving." T.C.A. § 55-10-205(a). The Due Care law of Tennessee Code Annotated section 55-8-136 states in pertinent part:

> (b) Notwithstanding any speed limit or zone in effect at the time, or right-of-way rules that may be applicable, every driver of a vehicle shall exercise due care by operating the vehicle at a safe speed, by maintaining a safe lookout, by keeping the vehicle under proper control and by devoting full time and attention to operating the vehicle, under the existing circumstances as necessary in order to be able to see and to avoid endangering life, limb or property and to see and avoid colliding with any other vehicle or person, or any road sign, guard rail or any fixed object[.]

T.C.A. § 55-8-136(b). Furthermore, on a multiple-lane road, a "vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane

- 4 -

until the driver has first ascertained that such movement can be made with safety[.]" T.C.A. § 55-8-123(1).

In granting the Defendant's motion to suppress, the trial court considered the totality of the circumstances and implicitly accredited the video recording over the testimony of Trooper Sutherland. Although the trial court did not explicitly discredit Trooper Sutherland's testimony, the trial court found that the video recording did not sufficiently corroborate his testimony that the Defendant swerved in her lane of traffic or crossed over the center dividing line. As such, the stop and subsequent seizure of the Defendant was not supported by reasonable suspicion or probable cause. Because the evidence does not preponderate against the trial court's findings, the State is not entitled to relief.

## CONCLUSION

Based on the foregoing reasoning and analysis, the judgment of the trial court is affirmed.

_____
CAMILLE R. MCMULLEN, JUDGE

- 5 -