IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 19, 2020

**STATE OF TENNESSEE v. DAVID RIVERA**

**Appeal from the Circuit Court for Sevier County**
**No. 24977    Rex Henry Ogle, Judge**

_____

**No. E2019-01807-CCA-R3-CD**

_____

Following the denial of his motion to suppress, the Defendant, David Rivera, entered a guilty plea to driving under the influence of an intoxicant (DUI), fourth offense, but properly reserved, in accordance with Tennessee Rule of Criminal Procedure 37(b)(2)(A), a certified question of law regarding the legality of his traffic stop. Because the Defendant's traffic stop was supported by probable cause, or at a minimum, reasonable suspicion, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and J. ROSS DYER, JJ., joined.

William L. Wheatley, Sevierville, Tennessee, for the Defendant-Appellant, David Rivera.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Assistant Attorney General; Jimmy B. Dunn, District Attorney General; and Brad Jones, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

This case concerns the February 12, 2018 traffic stop of the Defendant's vehicle in Sevier County based on a faulty taillight, which resulted in his arrest for DUI, fourth offense, and for driving a motor vehicle without functioning taillights/stoplight.. According to the affidavit of complaint, Corporal Roskowski, upon stopping the Defendant, detected the odor of an alcoholic beverage coming from the Defendant's person and observed the Defendant's "red glossy eyes" and "slurred speech." The Defendant subsequently admitted to drinking alcohol, performed poorly on field sobriety tests, and "blew a .240 B.A.C. on the intoximeter." Corporal Roskowski also noted in the affidavit that the Defendant had three "prior convictions for DUI's in Sevier County, TN."

On November 5, 2018, as a result of the aforementioned arrest, the Defendant was charged by presentment with DUI (Count 1); driving a motor vehicle with a blood alcohol concentration above the legal limit (Count 2); driving a motor vehicle without functioning taillights/stoplights (Count 3); DUI, fourth offense (Count 4); and driving a motor vehicle with a blood alcohol concentration above the legal limit, fourth offense (Count 5). See Tenn. Code Ann. §§ 55-10-401(1), (2), 55-10-402(a)(4), 55-9-402. The Defendant filed a motion to suppress the evidence resulting from his traffic stop that led to his arrest, arguing that the stop was illegal because the officer lacked probable cause or reasonable suspicion that he was engaged in or had engaged in criminal activity, given that the Defendant's taillights were operational.

At the suppression hearing, Corporal Robert Roskowski of the Pigeon Forge Police Department testified that he encountered the Defendant on February 12, 2018, on the Parkway in the Pigeon Forge city limits. He stated that as the Defendant drove south on the Parkway, he observed that the Defendant's "passenger side taillight was out." Corporal Roskowski acknowledged that this faulty taillight was the sole reason he stopped the Defendant's vehicle. He offered that his encounter with the Defendant was captured on a video recording from the camera mounted on his patrol cruiser's dashboard.

The video recording of the Defendant's stop was played for the trial court and admitted into evidence. This recording showed the Defendant's vehicle passing through the intersection as Corporal Roskowski stopped at the red light. As the Defendant's vehicle moved away from Corporal Roskowski's patrol cruiser, the Defendant's right rear running light was dimly lit while his left rear running light was brightly illuminated. When the traffic light turned green, Corporal Roskowski accelerated and moved into the center lane directly behind the Defendant's vehicle, and for the next twenty-three seconds, the Defendant's right rear running light was not illuminated. As the Defendant's vehicle moved into the turn lane with his left turn signal flashing, a dim illumination from the right rear running light was visible, and Corporal Roskowski turned on his blue lights to stop the Defendant. The Defendant slowed down, and his right brake light illuminated periodically. Once the Defendant's vehicle came to a stop, his right brake light turned off and his right running light was very dimly lit compared to his left running light. When Corporal Roskowski and another officer approached the Defendant's vehicle, the Defendant immediately offered that he was trying to get his daughter home because she was drunk. Corporal Roskowski asked for the Defendant's identification, stated that he could smell alcohol coming from the Defendant's car, and asked the Defendant if he had "some, too," to which the Defendant replied, "Yeah, I did have a couple." Corporal Roskowski informed the Defendant that the reason he stopped him was because the Defendant's taillight was out. He accepted the Defendant's identification, requested the Defendant's daughter's identification, and asked the Defendant to wake up his daughter to make sure

she was "okay." Corporal Roskowski asked the Defendant where he and his daughter had been and then requested that the Defendant step out of the vehicle and patted him down. Finally, Corporal Roskowski asked the Defendant to perform some field sobriety tests, and when the Defendant performed very poorly on these tests, he placed him under arrest.

During direct examination, the State paused the recording at the 01:31:40 mark, and Corporal Roskowski noted that this portion of the recording showed that one of the Defendant's taillights was "lit" and one of his taillights was "out" as he followed directly behind the Defendant on the Parkway.

During cross-examination, Corporal Roskowski explained that he stopped the Defendant because the Defendant's running light, not his brake light, was "out." He acknowledged that when the Defendant put his car in park, the brake light turned "off[,]" and there was "some" illumination coming from the Defendant's running light, although he believed this illumination came from his patrol cruiser's headlights "shining on [the Defendant's] taillight." When defense counsel asked him if the Defendant's taillight was out, Corporal Roskowski replied, "It's operational, but it's not in good working order." He confirmed that he stopped the Defendant pursuant to Code section 55-9-402 and that the Defendant was not speeding or failing to maintain his lane or doing anything else that necessitated a stop of the Defendant's vehicle at that time.

Danielle Rivera, the Defendant's daughter, also testified at the suppression hearing. She stated that the vehicle the Defendant was driving the night of his arrest belonged to her and that she was a passenger in the vehicle that night. Ms. Rivera identified three photographs she had taken that depicted her vehicle and its "working taillight." She asserted that these photographs showed the condition of her vehicle on the night of February 12, 2018. Ms. Rivera acknowledged that she took the first two photographs, which depicted the rear running lights illuminated, prior to February 12, 2018, because she had "got[ten] pulled over in Gatlinburg a year prior—or maybe that time prior" for her taillight being "too dark[,]" so she "changed [her] [taillight] tape,"[1] and the court "dismissed it." Ms. Rivera said she took the last photograph, which depicted her vehicle

---

[1] We note the description of Tail Light Tape provided in Brotherton:

> [Tail Light Tape] is a red film that "[r]esists [w]eather and [m]oisture" and is "[t]ranslucent like an [o]riginal [l]ens." It is used to temporarily patch cracks or holes in a vehicle's plastic taillight lens until the lens can be replaced. Apparently some automobile owners use the tape indefinitely in order to avoid the expense of replacing the broken lens.

323 S.W.3d at 869 n.3.

with the brake lights engaged, on February 16, 2018. These photographs of the vehicle were admitted into evidence.

Before ruling on the motion to suppress, the trial court reviewed the video recording of the Defendant's stop two additional times. After hearing argument from counsel, the trial court made the following findings of fact and conclusions of law:

> [I]t appears to the Court that there is a time when the officer first goes through the intersection. The officer waited on the light to turn green . . . . And he goes on down the road just a little bit, and it appears to the Court from looking at the video that at least a particular time that there was no illumination from the passenger side taillight.
>
> Now, that's what it appears to the Court, and based upon that—and granted, maybe the taillight tape was not reflecting. I don't know. But it does appear to the Court that at least for a period of time there that there is no illumination on the passenger side rear—the taillight.
>
> . . . .
>
> And so for that reason, the Court does think that the officer did have a reasonable basis to stop the car to inquire. I do. I really do. And so for that reason, the Court must respectfully overrule the motion to suppress.
>
> . . . .
>
> And the Court further finds that there was, in addition to that, of course, probable cause for the officer to stop the vehicle as well.

On September 16, 2019, the Defendant, pursuant to a negotiated plea agreement, entered a guilty plea in Count 4 to DUI, fourth offense,[2] and properly reserved the following certified question of law in accordance with Tennessee Rule of Criminal Procedure 37(b)(2)(A):

---

[2] The Defendant also entered a guilty plea in docket number 25707, an unrelated case, to violating the financial responsibility law.

Whether the stop of the 2003 Misubishi [sic] Eclipse operated by the Defendant on February 12, 2018 by Officer Robert Roskowski of the Pigeon Forge Police Department on the Parkway in Pigeon Forge, Sevier County, Tennessee at or near 1:32 a.m., and the subsequent observations, search and seizure of the Defendant by Officer Roskowski, were in violation of the Fourth Amendment to the Constitution of the United States and/or Section 7, Article I of the Constitution of the State of Tennessee, in that (1) the stop of the Defendant's vehicle was made without a warrant or other process, (2) the stop of the vehicle was based upon a "tail light not working" on the right tail/brake light unit that had been repaired with red tail light tape that was in good condition and did not allow any clearly visible white light to emanate from the tail light but which caused the right tail light/brake light to appear dimmer than the factory left tail light/brake light and (3) there were no other exigent circumstances or grounds supporting the stop of the vehicle. In the event the stop violated these Constitutional provisions, all evidence secured by Officer Roskowski and his observations would be suppressed and inadmissible.

Pursuant to the Defendant's guilty plea to DUI, fourth offense, the trial court imposed a sentence of two years with a release eligibility of thirty percent and service of a minimum of 150 days in confinement. The court also imposed a $3000 fine and costs, a suspension of the Defendant's driver's license for eight years, and an "Alcohol and Drug Assessment w[ith] minimum of Aftercare required." The remaining counts of the presentment were dismissed by entry of an order of nolle prosequi. On October 8, 2019, the Defendant filed a timely notice of appeal.

## ANALYSIS

On appeal, the Defendant contends that "the stop of his vehicle by [Corporal] Roskowski violated the Fourth Amendment to the United States Constitution and article I, section 7 of the Constitution of the State of Tennessee as an unreasonable seizure." He claims that all evidence obtained by this unlawful seizure "should be suppressed as fruit of the poisonous tree" and that all charges against him in this matter "should be dismissed." The Defendant acknowledges that the taillight repair tape on the vehicle he was driving caused his taillight "to appear dimmer than the factory installed light on the other side of his vehicle." However, he asserts that a decision by this court upholding the stop "would amount to a ruling that a repair of a taillight/brake light that did not return to factory

specifications would always provide a reasonable basis for an investigatory stop," a result not contemplated by State v. Brotherton, 323 S.W.3d 866 (Tenn. 2010), and State v. Jose Luis Gonzalez, No. 2011-02135-CCA-R9-CD, 2012 WL 6050317 (Tenn. Crim. App. Dec. 5, 2012), or by the legislature when it enacted Tennessee Code Annotated section 55-9-402. The State counters that the trial court properly determined that the police had reasonable suspicion to believe that the Defendant's taillight was not functioning properly and that the stop was legal. We conclude that because the Defendant's traffic stop was supported by probable cause, or at a minimum, reasonable suspicion, he is not entitled to relief.

At the suppression hearing, Officer Roskowski testified that the only reason he stopped the Defendant was pursuant to Code section 55-9-402, which states in pertinent part:

> (b)(1) Every motor vehicle shall be equipped with two (2) red tail lamps and two (2) red stoplights on the rear of the vehicle, and one (1) tail lamp and one (1) stoplight shall be on each side . . . .
>
> (2) The stoplight shall be so arranged as to be actuated by the application of the service or foot brake and shall be capable of being seen and distinguished from a distance of one hundred feet (100′) to the rear of a motor vehicle in normal daylight, but shall not project a glaring or dazzling light.
>
> (3) The stoplight may be incorporated with the tail lamp.
>
> . . . .
>
> (c) Each lamp and stoplight required in this section shall be in good condition and operational.

Tenn. Code Ann. § 55-9-402 (Supp. 2018).

Although this is an appeal of a certified question of law, we apply the same standard of review that we would in considering the underlying issue, which is the denial of the motion to suppress. State v. Hanning, 296 S.W.3d 44, 48 (Tenn. 2009) (citing State v. Nicholson, 188 S.W.3d 649, 656 (Tenn. 2006)). A trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). The prevailing party in the trial court "is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well

as all reasonable and legitimate inferences that may be drawn from that evidence." Id. Moreover, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." Id. Despite the deference given to trial court's findings of fact, this court reviews the trial court's application of the law to the facts de novo with no presumption of correctness. State v. Montgomery, 462 S.W.3d 482, 486 (Tenn. 2015) (citing State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001)).

Both the Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution protect citizens from unreasonable searches and seizures. U.S. Const. amend. IV; Tenn. Const. art. I, § 7. The Tennessee Supreme Court has held that Tennessee's search and seizure provision is "'is identical in intent and purpose with the Fourth Amendment.'" State v. Smith, 484 S.W.3d 393, 400 (Tenn. 2016) (quoting Sneed v. State, 423 S.W.2d 857, 860 (Tenn. 1968)). "[U]nder both the federal and state constitutions, a warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997) (citing Coolidge v. New Hampshire, 403 U.S. 443, 454-55 (1971); State v. Bartram, 925 S.W.2d 227, 229-30 (Tenn. 1996)).

One of these narrow exceptions is when an officer has probable cause or reasonable suspicion to believe that a traffic violation has occurred when he or she initiates a traffic stop. Brotherton, 323 S.W.3d at 870 (citing Whren v. United States, 517 U.S. 806, 810 (1996); Delaware v. Prouse, 440 U.S. 648, 663 (1979); State v. Vineyard, 958 S.W.2d 730, 736 (Tenn. 1997)); see State v. Watson, 354 S.W.3d 324, 329 (Tenn. Crim. App. 2011). Here, the Defendant was clearly seized when Corporal Roskowski turned on his blue lights to stop the Defendant's vehicle. See State v. Davis, 484 S.W.3d 138, 143 (Tenn. 2016); State v. Day, 263 S.W.3d 891, 902 (Tenn. 2008). Accordingly, we must determine whether this officer had probable cause or reasonable suspicion to believe that a traffic violation had occurred when he initiated the stop of the Defendant's vehicle. See Brotherton, 323 S.W.3d at 870; Vineyard, 958 S.W.2d at 734; Whren, 517 U.S. at 810.

The Tennessee Supreme Court has recognized that it is impossible to precisely articulate what probable cause means. Smith, 484 S.W.3d at 400. Instead, probable cause is a "'practical, nontechnical concept.'" Id. (quoting State v. Jacumin, 778 S.W.2d 430, 432 (Tenn. 1989)). "'[T]he strength of the evidence necessary to establish probable cause . . . is significantly less than the strength of evidence necessary to find a defendant guilty beyond a reasonable doubt.'" Davis, 484 S.W.3d at 143-44 (quoting State v. Bishop, 431 S.W.3d 22, 41 (Tenn. 2014)). "'[T]he constitutional validity of the [seizure] does not depend on whether the suspect actually committed any crime,' and 'it is irrelevant to the

probable cause analysis what crime a suspect is eventually charged with or whether a person is later acquitted of the crime for which she or he was arrested.'" Id. at 144 (alteration in original) (quoting Wright v. City of Philadelphia, 409 F.3d 595, 602 (3d Cir. 2005) (citations omitted)). "[P]robable cause exists when 'at the time of the [seizure], the facts and circumstances within the knowledge of the officers, and of which they had reasonably trustworthy information, are sufficient to warrant a prudent person in believing that the defendant had committed or was committing an offense.'" State v. Dotson, 450 S.W.3d 1, 50 (Tenn. 2014) (quoting State v. Echols, 382 S.W.3d 266, 277-78 (Tenn. 2012)); see Smith, 484 S.W.3d at 400. Under circumstances where it is simple for an officer to determine whether a violation has been committed under a traffic statute, "no further investigation is necessary and the police officer is justified in issuing a citation." Smith, 484 S.W.3d at 400-01.

We note that "[i]f a police officer lacks probable cause to seize a motorist, he nevertheless may legitimately initiate a brief, investigatory traffic stop if he possesses a 'reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been or is about to be committed.'" Id. at 401 (quoting State v. Binette, 33 S.W.3d 215, 218 (Tenn. 2000)). As opposed to circumstances in which an officer has probable cause to stop a motorist in order to issue a citation, "reasonable suspicion stops are investigatory in nature." Id. In situations where the officer cannot discern whether a motorist has violated a traffic statute, "the officer would not have probable cause to stop the motorist but might have sufficient reasonable suspicion to do so." Id.

"The level of reasonable suspicion required to support an investigatory stop is lower than that required for probable cause." Day, 263 S.W.3d at 902 (citing Alabama v. White, 496 U.S. 325, 330 (1990); State v. Pulley, 863 S.W.2d 29, 31 (Tenn. 1993)); see State v. Lindsey A. Ochab, No. M2015–02290–CCA–R3–CD, 2016 WL 6247429, at *7 (Tenn. Crim. App. Oct. 26, 2016) (The likelihood of criminal activity required for reasonable suspicion is not as great as that required for probable cause and is "considerably less" than that required to satisfy the preponderance of the evidence standard. (quoting United States v. Sokolow, 490 U.S. 1, 7 (1989)). "'Reasonable suspicion is a particularized and objective basis for suspecting the subject of a stop of criminal activity[.]'" Smith, 484 S.W.3d at 401 (quoting Binette, 33 S.W.3d at 218). "[O]fficers must have some reasonable basis to warrant investigation" and "a mere 'inchoate and unparticularized suspicion or "hunch"' is not enough to generate reasonable suspicion." Brotherton, 323 S.W.3d at 870 (quoting Terry v. Ohio, 392 U.S. 1, 27 (1968)). Therefore, "'[i]n determining whether an investigatory detention is based upon reasonable suspicion, we engage in a fact-intensive and objective analysis, reviewing the record for specific and articulable facts, that the defendant had committed, or was about to commit, a criminal offense.'" Smith, 484 S.W.3d at 402 (quoting Hanning, 296 S.W.3d at 49) (internal quotation marks omitted)). A court must consider the totality of the circumstances in determining whether an officer

has reasonable suspicion for an investigatory stop. Brotherton, 323 S.W.3d at 870; State v. Watkins, 827 S.W.2d 293, 294 (Tenn. 1992). These circumstances include officers' objective observations, information obtained from other law enforcement officers or agencies, information obtained from citizens, offenders' pattern of operation, and officers' inferences and deductions based on experience. Yeargan, 958 S.W.2d at 632 (citing Watkins, 827 S.W.2d at 294; United States v. Cortez, 449 U.S. 411, 418 (1981); Terry, 392 U.S. at 21). "[T]he content, quality, and quantity of information possessed by police must be assessed in determining whether it is sufficiently reliable to support a finding of reasonable suspicion." State v. Keith, 978 S.W.2d 861, 867 (Tenn. 1998). In making a reasonable suspicion determination, "[o]bjective standards apply rather than the subjective beliefs of the officer making the stop." Day, 263 S.W.3d at 903 (citing State v. Norword, 938 S.W.2d 23, 25 (Tenn. Crim. App. 1996); Terry, 392 U.S. at 21-22).

In Brotherton, the Tennessee Supreme Court emphasized that reasonable suspicion does not require evidence proving that the defendant actually violated the law:

> A showing of reasonable suspicion does not require an actual violation of the law because "Terry accepts the risk that officers may stop innocent people" to investigate further. Illinois v. Wardlow, 528 U.S. 119 at 126, 120 S. Ct. 673. Thus, the proper inquiry should have been whether Trooper Sullivan had an "articulable and reasonable suspicion" that Mr. Brotherton's taillight violated Tenn. Code Ann. § 55-9-402, not whether Mr. Brotherton's taillight, in fact, violated Tenn. Code Ann. § 55-9-402. See United States v. Johnson, 242 F.3d at 709-10 ("[T]he question is not whether a Tennessee court would have found defendant guilty of the traffic infraction, but whether the officers had probable cause to believe that a violation had occurred."); see also United States v. Fowler, 402 F.Supp.2d 1338, 1340-41 (D. Utah 2005) (upholding the validity of a stop when the trooper mistook a fog light for a brake light because it reasonably appeared to violate the lighting laws under the circumstances).

323 S.W.3d at 871 (emphasis added).

The Defendant argues that his case is distinguishable from Brotherton because the tape covering his taillight, as evidenced in the photographs admitted at the suppression hearing, "was in good repair, covered the lights, was red in color and did not allow any white light to shine through." See id. at 871-72 (concluding that because the repair tape on Brotherton's taillight had "a hole in it that permitted a bright white light to shine through," the officer had an articulable and reasonable suspicion that the motorist's vehicle was not

- 9 -

in compliance with Code section 55-9-402 and, therefore, was justified in conducting an investigatory stop of the motorist). Although the Defendant acknowledges that "[t]he repair caused the light to appear dimmer than the factory installed light," he nevertheless insists that "the proper inquiry here is whether Officer Roskowski had an 'articulable and reasonable suspicion'" that the taillight failed to meet the law's requirements. The Defendant notes that Corporal Roskowski admitted at the suppression hearing that his taillight was operational, even though the officer also asserted that the taillight was "not in good working order." Finally, the Defendant argues that the video recording shows that "at [0]1:31:55 prior to the activation of the officer's emergency lights to stop [his] vehicle," his taillight was "operational and in compliance with the statute."

The Defendant also asserts that his case is distinguishable from Jose Luis Gonzalez, No. E2011-02135-CCA-R9-CD, 2012 WL 6050317 (Tenn. Crim. App. Dec. 5, 2012), and State v. Jody Kyle Banks, M2012-02722-CCA-R3-CD, 2013 WL 6706140 (Tenn. Crim. App. Dec. 18, 2013). He claims that unlike Jose Luis Gonzalez, his white reverse lights did not illuminate when his vehicle was in forward motion upon application of the brakes. See Jose Luis Gonzalez, 2012 WL 6050317, at *4 (holding that "the operation of the white reverse light during forward motion provided the authorities with at least a reasonable suspicion sufficient to justify an investigative stop to question the status of the brake lights if not probable cause to believe the operation of Appellant's brake lights violated the statutes governing such operation."). In addition, he claims that unlike Jody Kyle Banks, his taillight/brake light "was not broken and no white light show[ed through] the tape used to repair the light.[D's brief, 12]" See Jody Kyle Banks, 2013 WL 6706140, at *4 (concluding that the defendant's broken taillight assembly, which emitted a white light, provided the officer with "reasonable suspicion to believe that the defendant had violated Tennessee Code Annotated section 55-9-402(b)(1), requiring that the taillight be red, and Tennessee Code Annotated section 55-9-402(c), requiring that the taillight be in good condition"). We conclude that while Brotherton, Jose Luis Gonzalez and Jody Kyle Banks present slightly different factual scenarios from the circumstances in the Defendant's case, all of these cases contain analyses and law, in accordance with the authorities stated herein, that is helpful in deciding the Defendant's case.

Here, the trial court properly reviewed and considered the video recording of the Defendant's stop to determine what Corporal Roskowski observed prior to stopping the Defendant's vehicle. The record shows that the trial court reviewed this recording three times before finding that "for a period of time . . . there is no illumination on the passenger side rear—the taillight." Our review of this video recording does not preponderate against the trial court's factual finding regarding the Defendant's taillight.

The proof from the suppression hearing shows that Corporal Roskowski stopped the Defendant based on his observation that the Defendant's taillight was not functioning

- 10 -

properly. After carefully reviewing the video recording of the stop, we conclude that it fully supports the trial court's determination that Corporal Roskowski had probable cause to stop the Defendant's vehicle. This recording shows that that there were times that the Defendant's right taillight was either not illuminated at all or was emitting only a very dim light as compared to his other taillight. Consequently, Corporal Roskowski had probable cause to stop the Defendant based on his observation that the Defendant did not have two "red" taillights and two "red" stoplights on the rear of the vehicle, as required by Code section 55-9-402(b)(1), and that the Defendant's right taillight was not in "good condition and operational," as required by Code section 55-9-402(c). "'It is well established that a traffic violation—however minor—creates probable cause to stop the driver of a vehicle.'" Davis, 484 S.W.3d at 143 (quoting United States v. Barry, 98 F.3d 373, 376 (8th Cir. 1996)); see State v. Berrios, 235 S.W.3d 99, 105 (Tenn. 2007) ("As a general rule, if the police have probable cause to believe a traffic violation has occurred, the stop is constitutionally reasonable."); Vineyard, 958 S.W.2d at 736 (holding that officers' observation of the defendant's violations of traffic laws created probable cause justifying the stop). Because Corporal Roskowski observed the Defendant violating Code section 55-9-402, a Class C misdemeanor, he had probable cause to initiate a traffic stop and seize the Defendant by turning on his blue lights. See Davis, 484 S.W.3d at 147.

We also conclude, considering the totality of the circumstances surrounding the Defendant's stop, that Corporal Roskowski had, at a minimum, reasonable suspicion, supported by specific and articulable facts, that the Defendant's taillight violated Code section 55-9-402. Although an attempt to repair the broken taillight was made with taillight repair tape, this repair failed to allow for sufficient illumination, which provided Corporal Roskowski with an articulable and reasonable suspicion that the Defendant's taillight violated Code section 55-9-402(b)(1) and Code section 55-9-402(c). See Brotherton, 323 S.W.3d at 871-72; Jody Kyle Banks, 2013 WL 6706140, at *4; Jose Luis Gonzalez, 2012 WL 6050317, at *4. Accordingly, even if Corporal Roskowski did not have probable cause to stop the Defendant based on his observations, he had two separate grounds for initiating the investigatory stop of the Defendant's vehicle based on the insufficient illumination from his rear passenger-side taillight. In reaching this conclusion, we, like the Brotherton court, "are not finding that Tenn. Code Ann. § 55-9-402 requires taillights to be maintained in the same condition that they were in when the automobile left the showroom or that taillights repaired with taillight repair tape are per se violations of Tenn. Code Ann. § 55-9-402." 323 S.W.3d at 872. Instead, we are simply concluding that a vehicle with a repaired taillight that provides insufficient illumination may provide the police with at least reasonable suspicion justifying an investigative stop. See Jose Luis Gonzalez, 2012 WL 6050317, at *4. In this case, the dim and, at times, non-existent illumination from the Defendant's taillight provided Corporal Roskowski with probable cause, or at least a reasonable suspicion, to stop the Defendant's vehicle. Because the trial court properly

- 11 -

denied the motion to suppress in this case, the Defendant is not entitled to relief on the basis of his certified question of law.

## CONCLUSION

Because the stop in this case was constitutionally permissible, we affirm the judgment of the trial court.

_____
CAMILLE R. MCMULLEN, JUDGE